**UNITED STATES of America,**
**Plaintiff,**

v.

**McKENZIE COUNTY, NORTH DAKOTA,** a municipal corporation; Ivan Murray; John F. Mullaney; The Texas Company, a corporation; and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants.

Civ. No. 271.

United States District Court
D. North Dakota, N. D.

Sept. 30, 1960.

Gordon Thompson, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Walter O. Burk, Williston, N. D., for defendants.

REGISTER, Chief Judge.

This is an action to quiet title and to determine adverse claims to the following described lands situated in the County of McKenzie, State of North Dakota:

The North Half of the Southwest Quarter (N ½ SW ¼), Southeast Quarter of the Southwest Quarter (SE ¼ SW ¼) and the Northwest Quarter of the Southeast Quarter (NW ¼ SE ¼) of Section 5, and the Southwest Quarter of the Northeast Quarter (SW ¼ NE ¼), Northeast Quarter of the Northwest Quarter (NE ¼ NW ¼) and the South Half of the Northwest Quarter (S ½ NW ¼) of Section 8, all in Township 153 North, Range 95 West of the Fifth Principal Meridian.

Plaintiff's complaint is in the North Dakota statutory form and alleges, among other things, that the plaintiff is the owner in fee simple absolute and in possession of said lands, subject to a valid and subsisting oil and gas lease held by the defendant, The Texas Company.

The defendants Ivan Murray and John F. Mullaney have filed answers conceding that the plaintiff is the owner of the surface and one-half of the mineral rights underlying said lands, and both allege that at the time of the execution and delivery of the deed to the United States from Ivan Murray, said grantor was the owner of all of the minerals of whatever kind or nature underlying said lands and that the defendant John F. Mullaney was the owner of 35 mineral acres by reason of a certain mineral conveyance by said Ivan Murray to him. The defendant Mullaney also includes in his answer a counterclaim alleging that he is the owner of 35 mineral acres of the minerals in said lands, which claim the plaintiff has denied by its reply. Defendant Murray contends that he is at present the owner of one-half of all the minerals underlying said lands, subject to conveyance to said Mullaney.

Both of the answering defendants allege that the Secretary of the Interior duly instructed the Legal Division of the Department of the Interior to make a determination of the mineral interests in said lands owned by the United States; that pursuant to said instructions said Department, through the Bureau of Land Management, gave due notice to all parties having an interest in said minerals; that a hearing was held and a departmental decision made on November 4, 1955; that a further review was subsequently made, of which all parties in interest were duly notified; that thereafter, and on the 30th day of April, 1956, said Department rendered its decision determining the extent of the plaintiff's mineral interest, and that no appeal was ever taken from said decision to the Secretary of the Interior; and that said de-

termination is final and conclusive of all matters at issue here and that, therefore, the same are res judicata, and that the United States is estopped to question the title of the answering defendants because of said departmental determination.

The pertinent facts are undisputed and are as follows: The lands here involved were originally patented under homestead entry, Williston 020931, to Emily Garland, on April 29, 1919, granting her fee title subject only to a reservation of coal to the United States under the Act of June 22, 1910, 30 U.S.C.A. § 85. Through mesne conveyances title was recorded in J. Y. Hull on May 28, 1925. On December 11, 1928, the land was sold pursuant to tax forfeiture proceedings of the State of North Dakota for taxes assessed for the year 1927, and McKenzie County became the successful bidder and received a tax deed for said lands on October 1, 1940. On May 4, 1948, McKenzie County granted an oil and gas lease to Thomas G. Dorough for a primary term of ten years, which lease was assigned by him to The Texas Company on October 25, 1948. McKenzie County, on May 3, 1949, conveyed said lands to defendant Ivan Murray; the deed of conveyance recited that the transfer was made subject to the provisions of Chapter 136, Laws of North Dakota, 1941, reserving to the County (grantor) fifty per cent of all oil, gas and minerals that may be found underlying said lands.

Defendant Murray brought a suit to quiet the title to said lands and obtained a judgment in the District Court for the Fifth Judicial District, State of North Dakota, on September 8, 1949.

By warranty deed dated February 2, 1951, defendant Murray conveyed said lands to the United States, pursuant to a land exchange under Title III of the Bankhead-Jones Farm Tenant Act, 7 U.S.C.A. § 1010 et seq., the negotiations for which were conducted by the Soil Conservation Service. The deed from Murray to the United States contained the following provisions, immediately following the description in the granting clause:

"subject to the following reservations and exceptions:

"The rights of the United States and third parties recited in the patent from the United States.

"Existing public utility easements.

"Right-of-way easements for roads and highways granted, created or established by or for the use of the public and by or under local, State or Federal laws or decisions, or otherwise, prior to the conveyance of title to the United States.

"Except 50% of all oil, gas or minerals upon or underlying ·said land, received by McKenzie County, North Dakota, under the provisions of Ch. 136, Laws of North Dakota, 1941, in its county deed to Ivan Murray, dated May 3, 1949 and recorded in the office of the Register of Deeds of McKenzie County, North Dakota, in Book '54' of Deeds, Page 505."

A default judgment was obtained by defendant Murray on February 13, 1954, in the District Court, Fifth Judicial District, State of North Dakota, in an action entitled "Ivan Murray v. McKenzie County, a municipal corporation organized and existing under and by virtue of the laws of North Dakota", quieting his title against McKenzie County. This judgment was amended on March 4, 1954, decreeing the defendant Murray to be the owner of an undivided one-half interest in all minerals under the subject lands.

By decisions of the Supreme Court of North Dakota, rendered on March 21, 1951, statutory reservations in favor of counties of 50 per cent of mineral interests in lands acquired through tax forfeiture proceedings, which lands were subsequently sold, were declared void. Kopplin et al. v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137; Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W. 2d 132. The decisions of the Supreme Court of North Dakota in these two cases were subsequently adhered to in

the case of State et al. v. California Co. et al., 1953, 79 N.D. 430, 56 N.W.2d 762.

On July 1, 1954, the Bureau of Land Management, being unaware of the existence of The Texas Company lease, granted an oil and gas lease on subject lands in Section 5 to E. B. McFadden. Said lease covered 100 per cent of the oil and gas under said lands. On February 1, 1954, a similar lease was granted, under the same circumstances, to Halvor Holbeck, on the subject lands in Section 8.

The Texas Company, in August, 1954, filed identical protests to the McFadden and Holbeck leases, protesting issuance of these leases on the ground that it claimed the operating rights under its 1948 lease from McKenzie County. The Bureau of Land Management sustained the Texas Company protests and cancelled both the McFadden and Holbeck leases on the administrative conclusion that The Texas Company lease was valid and, therefore, the United States had no leasable interest in oil, gas and minerals in subject lands.

In a subsequent action, Holbeck v. Hull, et al., 1959, 97 N.W.2d 666, the rights of all the claimants were determined, excepting the contest between the United States and the defendants Murray and Mullaney in this action. In said decision it was determined that the tax forfeiture proceeding was regular and valid and that The Texas Company lease was valid and subsisting.

All the parties hereto agree that there are two principal issues presented for determination: First, the effect, if any, of the administrative determination of the Bureau of Land Management in the exercise of its leasing functions as to the interest of the United States in oil, gas and minerals in the lands here involved, and, Second, the quantity or extent of interest of the United States in oil, gas and minerals in and underlying said lands according to the terms and conditions of the warranty deed dated February 2, 1951, from defendant Ivan Murray conveying the subject lands to the United States. The Court will discuss and determine the issues in the order above stated.

The answering defendants here urge that the United States is now estopped from seeking a judicial determination of its title to the property rights in question in view of the departmental decision rendered by the Director of the Bureau of Land Management, Department of the Interior, on April 30, 1956, and that by virtue of such decision, such issue is res judicata. Said decision contains the recitation " * * * it appears that the United States owns all of the coal deposits in the lands and 50 per cent of all other minerals in the lands and that the remaining 50 per cent interest in minerals other than coal in the lands is privately owned".

It is apparent that the decision of April 30 was rendered by the Director of the Bureau of Land Management for the sole and restricted purpose of determining the validity of the oil and gas leases executed by the Department of Interior to McFadden and Holbeck. To here hold otherwise—that is, that said decision constituted a final determination of the mineral interests acquired by the United States under the deed executed by Ivan Murray—would be tantamount to a ruling that an officer of the United States could, by a ruling of an administrative division, dispose of the rights and property of the United States. It is elementary that such power is lodged in the Congress by the Constitution. Article IV, Section 3, Clause 2, Constitution of the United States of America. Of course, that authority may be properly delegated and has, in fact, been delegated with respect to "public lands". Congress has designated the Department of the Interior as the supervising agent of the Government in all matters relating to "public lands" (5 U.S.C.A. § 485), and in such capacity said Department constitutes a special tribunal vested with judicial powers to hear and determine claims to those lands. Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659. However, once a patent to such "public lands" has

been issued, the authority and jurisdiction of the Department of the Interior ceases and any subsequent claim of the United States to title therein, or other title disputes between, private claimants must be determined by the Courts. Brown v. Huger, 21 How. 305, 62 U.S. 305, 16 L.Ed. 125; United States ex rel. McBride v. Schurz, 102 U.S. 378, 26 L. Ed. 167, and Pettibone et al. v. Cook County, Minnesota, 8 Cir., 120 F.2d 850, 855.

▉ Generally, an administrative determination does not constitute an estoppel against the United States. United States v. Leitner et al., D.C., 86 F.Supp. 628. The government of the United States cannot be estopped by the unauthorized acts of its officers and agents acting contrary to law. Utah Power and Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791. Plainly, the decision of the Department of the Interior referred to above was rendered for the purpose of administratively determining the validity of the Holbeck and McFadden leases. As an incident to that determination, the Department concluded that if the leases were to continue in effect it was essential for proper administration of the lands involved to determine the extent of the mineral interests which these leases covered. Such determination has no effect beyond the administrative purpose for which it was rendered, for the reason that under the law it was then administering, the Department's authority is limited to the leasing functions therein prescribed. (30 U.S. C.A. § 351 et seq.)

▉ For the reasons above stated, it is the opinion of this Court that the Government is not estopped from seeking a judicial determination of its title to the property rights in question; that the question of the Government's ownership of the mineral rights in question, as against the alleged private ownership, is a judicial question which can only be finally determined in the Courts and not by administrative action, opinions or decisions of the Department of the Interior.

The remaining question is as to the quantity or extent of interest of the United States in the oil, gas and minerals in and underlying said lands, according to the terms and conditions of the warranty deed from Ivan Murray heretofore referred to.

Pertinent provisions of the North Dakota statutes (NDRC 1943) are as follows:

"47–0911. Interpretation of Grants. Grants shall be interpreted in like manner with contracts in general except so far as is otherwise provided by this chapter. If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction, and if several parts of a grant are absolutely irreconcilable, the former part shall prevail. A clear and distinct limitation in a grant is not controlled by other words less clear and distinct."

"47–0913. Grant Shall Be Interpreted in Favor of Grantee; Exceptions. A grant shall be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

"9–0703. Contract Interpreted to Give Effect to Mutual Intention. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied."

"9–0702. Language of Contract Governs if Clear. The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."

"9–0704. Intention Ascertained From Writing Alone if Possible.

When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

"9–0706. Contract Interpreted as a Whole. The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others."

"9–0712. Contract Explained by Reference to Circumstances. A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

Counsel for defendants specifically asserts (Br. p. 1) that "there is no claim of any ambiguity in the deed". Therefore, the Court will first attempt to interpret such deed so "as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable * * *" and in accordance with the express language thereof.

"The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein * * *". 26 C.J.S. Deeds § 84, p. 822.

The deed involved is the statutory form of Warranty Deed. It provides that the grantor "does by these presents Grant, Bargain, Sell and Convey unto the said Grantee all the tract or parcel of land * * *" thereafter described, "subject to the following reservations and exceptions".

The first paragraph next following is: "The rights of the United States and third parties recited in the patent from the United States"; the second is "Existing public utility easements"; the third is "Right-of-way easements for roads and highways granted, created or established by or for the use of the public and by or under local, State or Federal laws or decisions, or otherwise, prior to the conveyance of title to the United

States."; and next follows: "Except 50% of all oil, gas or minerals upon or underlying said land, received by McKenzie County, North Dakota, under the provisions of Ch. 136, Laws of North Dakota, 1941, in its county deed to Ivan Murray, dated May 3, 1949 and recorded in the Office of the Register of Deeds of McKenzie County, North Dakota, in Book '54' of Deeds, Page 505."

Generally speaking, the words "subject to" mean "subordinate to" or "subservient to". 40 Words and Phrases, p. 388.

It seems obvious that the intent of the parties was that the conveyance was as to all of said premises, *"subject to"* the matters specifically referred to. The matters contained in the first three paragraphs (to which such conveyance was subject)—that is, rights of the United States and third parties recited in the original patent, existing public utility easements, and right-of-way easements, —were all matters involving rights, or possible rights, of others, and it is doubtful that anyone would argue that the grantor intended that he did, or intended to, exclude anything thereby from the grant or reserve any rights unto himself. That is, if in fact there were no rights recited in the patent, or if there were no existing valid public utility easements or right-of-way easements, the manifest effect of their inclusion in the deed would be to lessen the extent of the rights or encumbrances to which the grantee's interest was subject or subordinate. It would seem that the parties considered and intended that the fourth paragraph (that is, the one referring to the minerals "received by McKenzie County, North Dakota * * *" be in the same general category. Both parties doubtless believed that McKenzie County was, at such time, the owner of 50% of such minerals by virtue of the law referred to, and that McKenzie County had reserved it under the provisions of the County Deed to Ivan Murray, also referred to. However, as was determined later by the Supreme Court in the Kopplin and Kershaw cases, that belief was incorrect and false,

and McKenzie County had no such legal interest, and therefor the title granted and conveyed to the United States by Ivan Murray was not subject or subordinate thereto.

It is significant that grantor Murray, in this deed, did not purport to make any exception in his favor, and in the Court's opinion, did not intend to exclude anything from the grant. The apparent purpose of including in the deed the specific interests (or purported interests) heretofore referred to, was to avoid liability on a warranty of full title. The language in question was included as notice that the grantor believed his title was subject to the rights or encumbrances referred to and to prevent him from conveying a greater interest in the property than he owned. It appears that the controversial provision is a recital of facts which both parties believed to be true—and later found to be false. As to this, the conveyance to the United States was made specifically subject to an interest thought to be in a third party, but later determined to be void and non-existent. However, this fact did not operate to exclude such non-existent interest from the grant. It was neither a reservation nor an exception of mineral interests. McKenzie County had "received" no mineral interest in the lands involved, none was reserved by said County in its conveyance to Murray, and plaintiff took title to all of said premises "subject to" no such interest. See and compare Boring v. Filby, 151 Cal.App.2d 602, 311 P.2d 869; Powell v. Owens, 290 Ky. 108, 160 S.W. 2d 383; Roberts v. Robertson, 53 Vt. 690, 38 Am.Rep. 710. Also see: Klein et al. v. Humble Oil and Refining Co., Tex.Civ.App., 67 S.W.2d 911, and Powell v. Owens, 290 Ky. 108, 160 S.W.2d 383, 384.

Many cases have been cited by counsel for defendants with respect to exceptions from grants. An "exception" is defined as follows: "An exception is the withholding from the operation of the deed of something existent which otherwise the deed would pass to the grantee." Thompson on Real Property, Third Ed.,

Vol. 6, Sec. 3458, Def's. Brief, p. 3. Thereafter, following discussion and analysis of many cases, appears the following (Def's. Brief, pp. 8–9):

"The rule drawn from the foregoing cases by the writer of the text in Corpus Juris Secundum (26 C.J.S. Deeds, Sec. 139, p. 1008) is as follows:

"'Further, when certain tracts excepted are specifically described, and it is further recited that they have been previously sold or conveyed, the exception will be good, although the recital is false since it may be rejected, or although the prior conveyance did not effectuate a transfer of the property described therein, or even though the property previously conveyed reverts to the grantor by reason of the grantee in the prior conveyance ceasing to use it for the purpose prescribed in the deed.'"

With counsel's analysis of the cases, and the rule drawn therefrom, there is no disagreement. However, this Court is of the opinion that the provision here involved is not such an "exception", and that said cases are not applicable and that this case is not within the rule stated.

Therefore, it is the Court's opinion that the intent of the parties, as expressed in the deed itself, was that all of the interest and title of the grantor was included in the grant.

Counsel for plaintiff apparently take the view that if it be determined that the language of the deed, as to the provisions in dispute, is not "clear and explicit", and that in order to determine the intent of the parties, the attendant facts and surrounding circumstances before the parties at the time of making the deed be considered, the result would be the same. The Court agrees.

"A reasonable construction should be given to a reservation or exception according to the intention of the parties, ascertained from the entire instrument. There should be

considered, when necessary and proper, the force of the language used, the ordinary meaning of words, the meaning of specific words, the context, the recitals, the subject matter, the object, purpose, and nature of the reservation or exception, and the attendant facts and surrounding circumstances before the parties at the time of making the deed." 26 C.J.S. Deeds § 140(5), p. 1014. See: Saulsberry v. Maddix, 6 Cir., 125 F.2d 430.

For this purpose the Court will review briefly the facts and circumstances leading up to the execution and delivery of the warranty deed here involved.

Exhibit 3, which was received in evidence without objection, consists of some 133 separate pages numbered from 1 through 132, and 109½. This exhibit constitutes the entire office file, containing all records, correspondence, etc., pertaining to the transaction in question, kept and maintained in the Bureau of Land Management, Department of the Interior, Washington, D. C.

On May 11, 1949, defendant Ivan Murray submitted a fully-executed "Application for Land Exchange" to the Department of Agriculture, Soil Conservation Service, by which he agreed to exchange 320 acres therein described (and underlying which are the minerals which constitute the subject matter of this lawsuit) for 200 described acres then owned by the United States. Incorporated in said Application (and referring to the lands offered by Murray) is the clause: "subject to the following reservations and exceptions: * * * McKenzie County reserves 50% of oil and mineral rights as provided in Chapter 136 Laws of North Dakota 1941." (It is here again pointed out that the Kershaw, Kopplin and California Company cases, supra, in which the Supreme Court of North Dakota held such reservations by the county to be void, had not as yet been decided.) No further exceptions or reservations are noted. It therefore is apparent that on May 11, 1949, when Murray submitted his application for land

exchange, he had no desire or inclination to reserve any minerals to himself, even though he then knew that he owned at least 50% of same.

The Soil Conservation Service, subsequent to receiving Murray's application, caused an appraisal to be made of the tracts involved and filed approved "Appraisal Reports". On page 3 of the "Appraisal Report" concerning Murray's tract, under the section headed "Valuation of Minerals (full value regardless of ownership):", there appears the notation "Not considered a mineral area". Thus on August 26, 1949, the date on which said Report was approved, the minerals underlying defendant Murray's land apparently had no known value. The total valuation placed on the 320 acre tract offered for exchange by Murray was $480; the total valuation placed on the 200 acre tract offered in exchange by the United States was $450.

On October 20, 1949, Mr. Murray was notified by letter (p. 106, Exh. 3) that his application for land exchange had been approved, subject to certain conditions set out in said letter, and subject to the terms and conditions of the Application. On November 8, 1950, defendant Murray was furnished with a form of warranty deed, together with a letter (p. 99, Exh. 3) wherein were contained instructions for execution and disposition of said deed. Apparently by this date Mr. Murray had decided it would be in his best interests to reserve to himself the 50% mineral interest he then believed he held, because prior to returning the executed deed per the instructions contained in the forwarding letter, he added, following the county reservation of 50% of the minerals "Also reserving unto Ivan Murray or his assigns the balance (or 50%) of all oil, gas or minerals upon or underlying said lands hereby conveyed."

On December 13, 1950 (as reflected by copy of letter, p. 69, Exh. 3), Mr. Arnold Winsness, Conservation Aid in the Watford City, North Dakota, office of the Soil Conservation Service, contacted Mr. Murray and explained to him, in view of the added reservation in the deed above re-

ferred to, the necessity for submitting a new application for exchange containing the necessary reservation—in effect, starting anew. Apparently after considering the matter, and after getting his son's opinion, Murray decided to cancel the mineral reservation to himself and proceed on the basis of his original application. It appears that Murray was desirous of completing the transaction as quickly as possible, in order that he could plant at least a part of the newly-acquired land in feed crops. According to Mr. Winsness, Murray requested that another warranty deed be submitted to him, omitting the mineral reservation to the grantor. This was done, and on February 2, 1951, the warranty deed, as evidenced by Exhibit 1, was executed by defendant Murray, containing only the reference to the interest in the minerals "received by McKenzie County", as set out above.

The first producing oil well was brought in in North Dakota on April 4, 1951. Needless to say, the value of gas and oil mineral interests in McKenzie County increased rapidly following the discovery of oil in a neighboring county.

On October 8, 1951, defendant Murray wrote a letter (p. 76, Exh. 3) to the late Senator William Langer of North Dakota, wherein he states, among other things: "* * * The Gov. reserved all the rights on the land I received, and the land I traded I could not reserve. However the land I traded has valuable oil, gas & mineral rights now. I have heard it is possible to get these rights back on this land. If this is true would you let me know as to how it can be done." It is readily apparent from the wording of this letter that Murray knew he had not reserved any interest in the minerals to himself, notwithstanding the Kopplin and Kershaw decisions, supra, rendered by the Supreme Court of North Dakota on March 21, 1951.

Because of the dispositive effect of the foregoing, it becomes unnecessary to discuss the other arguments advanced.

█ Based on the foregoing, this Court concludes that by the controversial recitation contained in the deed to the United States from defendant Murray, Murray did not intend to and did not except from its operation any part of the oil, gas or other minerals, and that all the mineral estate passed by virtue of that conveyance to the United States of America. It necessarily follows that if Murray had no interest in the minerals after the conveyance to the United States he could not convey any interest to the defendant Mullaney, and therefore said Mullaney has no interest in any of the oil, gas or other minerals in said land.

It is unfortunate that there is no decision by the North Dakota Supreme Court involving the interpretation of a provision in a warranty deed similar to that here involved, which deed was executed and delivered under similar facts and circumstances.

It will be the Order of this Court that:

1. The counterclaim of defendant John F. Mullaney be, in all things, dismissed;

2. That the title to the lands described in the complaint be quieted as to the claims of the defendants Ivan Murray and John F. Mullaney and that their claims be adjudged null and void and that they be decreed to have no estate or interest in or lien or encumbrance upon said lands and that said defendants be forever debarred and enjoined from further asserting such claims; and

3. That the plaintiff be decreed to be entitled to all accrued and accruing royalties and rentals provided for in the lease now held by the defendant, The Texas Company.

Judgment will be entered in accordance with the foregoing upon submission by counsel for plaintiff of a proper form.