Keith D. WINTER, Plaintiff,

v.

The UNITED STATES of America; Tenneco Oil Company; Virginia S. Najjar; Paulette Williamson; the Unknown Heirs, Devisees, Legatees, and Creditors of David P. Winter, a/k/a David Winter, Deceased; the Unknown Heirs, Devisees, Legatees and Creditors of Ulyssa K. Winter, Deceased; and All Other Persons Unknown Claiming any Estate or Interest in or Lien or Encumbrance Upon the Property Described in the Complaint, Defendants.

Civ. No. A4–82–76.

United States District Court,
D. North Dakota,
Northwestern Division.

Feb. 28, 1985.

James D. Geyer, Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, N.D., for plaintiff.

Jerome C. Kettleson, Asst. U.S. Atty., Bismarck, N.D., for the U.S.

Gary Wolberg, Fleck, Mather, Strutz and Mayer, Ltd., Bismarck, N.D., for Tenneco Oil Co.

MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

In this action the plaintiff, Keith D. Winter, seeks to quiet title to 50% of the oil, gas, and other minerals (excluding coal) under 320 acres of land in McKenzie County, North Dakota. Keith Winter is the successor in interest to David Winter.

The case is presented on stipulated facts and evidence The action arises under Title 28 U.S.C. § 2409a.

In resolution of this case, the chronology is important and the facts are organized accordingly.

1914 The United States issued its patent
Covering Twp. 149 N, Range 103 W,
Section 14, NE¼

1920 The United States issued its patent
Covering Twp. 149 N, Range 103 W,
Section 17, N½NW¼, W½NE¼

1940 Both parcels were conveyed to McKenzie County by tax deed, (lost for non-payment of taxes).

1945 McKenzie County conveyed to David Winter
Twp. 149 N, Range 103 W,
Section 17, N½NW¼, W½NE¼

The County Deed also contained the language:

> Subject to the provisions of Chapter 36, laws of North Dakota 1941, reserving to the County fifty percent of all oil, gas, or minerals that may be found underlying the land.

Feb. 8
1947 David Winter received a judgment quieting title against McKenzie County and prior owners as to the lands in Section 17. This judgment established in Winter a fee simple title as against McKenzie County.

Feb. 21
1947 McKenzie County conveyed to David Winter
Twp. 149 N, Range 103 W,
Section 14, NE¼

The County Deed contained this language:

> Subject to the provisions of Chapter 136, Laws of North Dakota 1941, reserving to the County fifty percent of all oil and gas, or minerals that may be found underlying the land.

1948 In preparation for a land exchange with Winter, the United States made an appraisal of the mineral interests in the land, and put them at zero value. (Docket No. 40, Exhibits 10 and 11.)

1949 In the course of a land exchange between the United States and David Winter, under a National Grazing Lands Program, David Winter gave:

Warranty Deed:

Date:    September 18, 1949
From:    David and Ulyssa Winter
To:      United States of America
Description:
    McKenzie County, North Dakota
    Township 149 N, Range 103 W,
    Section 14, NE¼
    Section 17, N½NW¼, W½NE¼

Reservations and Exceptions:

> Except fifty percent of all oil, gas, or minerals that may be found underlying said lands, reserved by McKenzie County, North Dakota, in its deed to David Winter dated December 5, 1945, recorded in Book 50 of Deeds at page 448 of the records of McKenzie County as to the above described lands in said Section 17, and by its deed to David Winter dated February 5, 1947, recorded in Book 53 of Deeds at page 409 in said County records as to the above described lands in section 14.

1951 In a series of cases the Supreme Court of North Dakota held that since the dominant statutes required that upon sale of lands taken for non-payment of taxes, the County must convey "all right, title and interest of the County therein." A prior statute requiring a reservation of 50% of the minerals in the County was void. The holdings clearly voided the reservations in the County deeds of 1945 and 1947.

The leading cases were:

*Kopplin v. Burleigh County,* 77 N.D. 942, 47 N.W.2d 137 (1951)

*Kershaw v. Burleigh County*, 77 N.D. 932, 47 N.W.2d 132 (1951)

*State v. California Co.*, 79 N.D. 430, 56 N.W.2d 762 (1953)

April 28
1977  Counsel for Tenneco Oil Company, lessee of 50% of the oil and gas under:

> Township 149, Range 103 W,
> Section 17, W½NE¼, E½NW¼

demanded that the United States lease the remaining minerals to it.

June 27
1977  The United States first claimed more than 50% of the minerals under the land acquired by the Winter deeds (Docket No. 39, Exhibit 7).

Jan.
1982  Keith D. Winter, personal representative of the estate of David Winter, received the following:

Quit Claim Deed:

> Date:   January 5, 1982
> From: County of McKenzie, North Dakota
> To:     Keith D. Winter, personal representative of the Estate of David Winter

Description:

> All its right, title, interest, claim or demand in and to all oil, gas, and other minerals in and under the following tracts . . . . .
>
> Township 149 N, Range 103 W,
> Section 14, NE¼
> Section 17, N½NW¼, N½NE¼

The deed then recites further that it is given to convey those interests previously reserved to McKenzie County in its deeds covering the above lands.

> "Said mineral reservations having been declared void by the North Dakota Supreme Court subsequent to said Deeds."

June
1982  Winter began this action to clear title to his claimed 50% of the minerals.

---

The basic issue is as to the effect of the reservation in the deed given from David and Ulyssa Winter to the United States of America in 1949.

■ Before that basic issue can be reached, we must consider whether the statute of limitations found at 28 U.S.C. § 2409a(f) defeats this action. The statute provides:

> Any civil action under this section shall be barred unless it is commenced within 12 years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

Briefly, the United States relies upon *United States v. McKenzie County, North Dakota*, 187 F.Supp. 470 (D.N.D.1960), which was a case decided on a substantially like, but not identical deed, and involving substantially like, but not identical facts. *United States v. McKenzie County* was affirmed by the Eighth Circuit in 1961 in *Murray v. United States*, 291 F.2d 161, and the United States claims that the date of that decision is the date upon which David Winter knew or should have known of the claim of the United States. If so, since this action was not commenced until June 1982, it is time barred. But this Court cannot accede to the proposition that a layman has constructive notice of a rule of law evolved out of a judicial decision based on a specific set of facts, and between other litigants. This Court has found no case where the doctrine of constructive notice, i.e., "knew or should have known" (a test based on reasonableness (*Amoco Production Co. v. United States*, 619 F.2d 1383 (10th Cir.1960)), was held as a matter of law to impute knowledge of a rule of law discernable from a judicial deci-

sion in an unrelated case, to a layman. In every case this Court has reviewed there has been something more, some evidence that the layman received a signal, or was in some manner required to keep himself alerted. The closest thing to the claim of the government that a decision in an unrelated case triggers an obligation to learn more, was the case of *McCann v. Coughlin*, 698 F.2d 112 (2nd Cir.1983). This was a civil rights case involving a claim of abuse of an inmate's right to be heard at a disciplinary hearing. In that case the court said:

> Officials are not required to predict future developments ... in the law (citing cases) and "State officials, however, may be charged with constructive knowledge of the established law at that time" citing *Wood v. Strickland*, 420 U.S. 308 at 322, 95 S.Ct. 992 at 1001, 43 L.Ed.2d 214.

In *Strickland* administrators were held to the standard of:

> ... should have known of settled, indisputable law applicable to the daily supervision of children.

I find from these cases that the correct rule is that a layman whose work requires that he continuously apply a given field or area of the law is required to keep informed of established law in that area of law. Therefore, since the Winters' had no reason to concern themselves on a daily basis with the scope of an interest conveyed by a county in a tax deed sale, this Court cannot say they "should have known" of the North Dakota Supreme Court decision in *Kopplin*, supra, and related cases.

So I conclude that this action is not time barred under Title 28 U.S.C. § 2409a(f).

Turning back to the basic issue of the effect of the reservation or exception in the deeds from Winter to the United States:

On its facts, this case parallels *United States v. McKenzie County, North Dakota*, 187 F.Supp. 470 (D.N.D.1960), *Murray v. United States*, 291 F.2d 161, in at least these elements:

1. In both cases the landowner acquired the land from McKenzie County by County Deed before the line of cases beginning with *Kopplin*, supra, was decided.

2. The two County Deeds in *Winter* (this case), and one County Deed in *McKenzie County*, as to the mineral reservations, are identical as to form (see Abstracts, Docket No. 39, Exhibits 1 and 2); and see *McKenzie County*, supra, at 472.

3. The two deeds from the landowner to the United States, as to mineral reservation references, are substantially the same except for the use of the phrase "reserved by McKenzie County" in the *Winter* deeds, ahd the phrase "received by McKenzie County" in the McKenzie County deed. The formats of the deeds are identical in that in both cases the relevant language appears in that portion of the deed which recites "subject to the following reservations and exceptions" (Docket No. 39, Exhibit 3, McKenzie County, supra, at 472).

4. In both cases the landowners traded the land to the United States pursuant to the grasslands program of the Bankhead-Jones Farm Tenant Act, Title 7 U.S.C. § 1010, et seq.

Plaintiff argues that Judge Register, at the time of his writing of *McKenzie County*, supra, deplored the fact that there was no North Dakota decision on the point (*McKenzie County*, supra, at 478), and that this vacuum was filled by the decision in *Stetson v. Nelson*, 118 N.W.2d 685 (N.D. 1962). In *Stetson*, supra, Kistler attempted to convey by warranty deed to Iverson "excepting and reserving to L.G. Marcus, one of the parties of the first part," ⅛th of the minerals. Marcus was not a party of the first part. He was a stranger to the instrument. Held: The reservation to the stranger was void, and the excepted and reserved interest remained in the grantor.

But *Stetson*, supra, is not determinative of our problem because in *Stetson* the language of the reservation reflected a clear commitment to transfer an interest to Mar-

cus. In that situation the sensible thing to do is to say that the defective transfer failed to transfer anything. Then if Marcus had a valid claim, he could assert it against the committor, instead of against a stranger to the commitment. But in *McKenzie County* and *Winter*, whatever the transferor intended, he did not intend to grant the 50% of minerals to McKenzie County.

From the history of events, these things stand out:

1. As to the land in Section 17, Winter quieted title against McKenzie County. Thus anticipating the North Dakota Supreme Court holding in *Kopplin*, supra, post, and thus demonstrating a consciousness of the importance of the mineral interests.

2. As to all the land traded by Winter, the United States made no claim of the 50% mineral interest until it was jarred into activity by the efforts of Tenneco to get a lease.

3. Neither counsel suggests, and the abstracts as extended, do not show that Winter, at any time after the land trade, exercised a claim of ownership as to the 50% mineral interest until Tenneco made its claim, and although the minerals lay in an active area for oil and gas development, i.e., about ten miles south of Charbonneau, North Dakota.

4. As to the language of the deed under the section on reservations and exceptions, the precise language is "except 50% of all oil ..., reserved by McKenzie County ... in its deed ... recorded...."

■ Thus the same problem arises as in the case of *McKenzie County*, supra. That is, did Winter recite this exception to limit his warranty, or to retain the interest?

There are at least four North Dakota statutes which have some bearing on this problem:

1. N.D.C.C. 47–09–11 provides that grants must be interpreted in like manner with contracts in general.

2. N.D.C.C. 9–07–03 provides that a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting.

3. N.D.C.C. 9–07–12 provides that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.

4. N.D.C.C. 9–07–14 provides that if the contract terms are ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood.

So under the four statutes above recited, we must seek to find the intent of the parties at the time the Winter deed was executed; and since the precise meaning is uncertain, we must seek to learn the interpretation which Winter believed the United States understood.

The North Dakota Supreme Court has recognized that the rules of N.D.C.C. 9–07 (the contract must be interpreted to give effect to the intent of the parties) are applicable to real property conveyances. See *Malloy v. Boettcher*, 334 N.W.2d 8 (N.D. 1983), where the North Dakota Supreme Court relies upon "the rule that a deed must be construed to carry out a grantor's intent if at all possible."

A comparison of the conveyance to the United States in the *McKenzie County* and the *Winter* cases suggests that the same law office drew both instruments. The conveyance to the United States was made by Winter in 1949, that by Murray (the McKenzie County case) was in 1951. Both Winter and Murray had quieted title on at least some of the tax title land before conveying to the United States. In the McKenzie County case, Murray had sought to hold out some minerals but the United States, having appraised the minerals at zero value, refused to accept the title so limited. In the *Winter* case there is no history of an attempt to hold out minerals from the conveyance unless it is discoverable in the language of the deed. In both

cases the United States had appraised the minerals under the land it was getting at zero value.

After a careful consideration of all of the "circumstances under which it was made and the matter to which it relates," and the discernible "sense in which the promisor understood," I conclude that the deed by Winter was intended by him to convey all of his interest of any nature in the land, and that the "exception" was intended as a limitation on the scope of his obligation under the warranty contained in the last paragraph of the deed.

Winter also argues that regardless of the initial effect of the conveyance, the United States, having exercised no control over the 50% mineral interest until it was alerted to its claim by the lawyer for Tenneco, is now estopped to claim the interest under the doctrine of laches.

"The general principle is, that laches is not imputable to the government; ... not in the notion of extraordinary prerogatives, but upon a great public policy." *U.S. v. Kirkpatrick and others*, 22 U.S. (Wheaton 9) 720, 735, 6 L.Ed. 199 (1824).

In *Guaranty Trust Company v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938), Justice Stone said:

"The rule quod nullum tempus occurrit regi—that the sovereign is exempt from the consequences of laches, and from the operation of statutes of limitations—appears to be a vestigial survival of the prerogative of the Crown. (cases cited) But whether or not that alone counts for its origin, the source of its continuing vitality where the royal privilege no longer exists is to be found in the public policy now underlying the rule even though it may in the beginning have had a different policy basis. Compare Maine, Ancient Law (10th Ed., 1930) 32 et seq. The true reason is to be found in the great public policy of preserving the public rights, revenues and property from injury and loss, by the negligence of public officers. And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, and equally applicable to all governments.' (cases cited)."

In *United States v. California*, 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889 (1947), the Supreme Court held:

"The government (the United States) which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act."

So the doctrine of laches is of no help to the plaintiffs in this case.

From the facts and the law above recited:

IT IS ORDERED:

1. As to the claim of the Winters against the United States, for title to 100% of all oil, gas, gravel, coal, clay, uranium, and other minerals in and under:

Township 149 North, Range 103 West
Section 14, NE¼
Section 17, N½NW¼, W½NE¼

is quieted in the United States of America, and the plaintiffs are forever debarred and enjoined from further asserting the same.

2. Except as to those claims, if any, of the remaining defendants which are derived from and under the United States of America, title to 100% of all oil, gas, gravel, coal, clay, uranium, and other minerals in and under the above described land, title is quieted in the United States of America, and those defendants are forever debarred and enjoined from further asserting the same.

Counsel for the United States of America shall prepare and serve copies of proposed judgment within ten days.