**Barbara F. STRACKA and Eugenia F. Whelihan, Plaintiffs and Appellants,**

v.

**Harvey A. PETERSON; Norman L. Peterson; Oil Development Company of Texas, a foreign corporation; Traverse Oil Company, a foreign corporation, Defendants and Appellees.**

**Civ. No. 10925.**

Supreme Court of North Dakota.

Nov. 21, 1985.

---

E.J. Rose, Bismarck, for plaintiffs and appellants.

Alfred C. Schultz, Bismarck, for defendant and appellee Norman L. Peterson.

Conmy, Feste, Bossart, Hubbard & Corwin, Fargo, for defendant and appellee Harvey A. Peterson.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee Oil Development Co. of Texas; argued by Jane Fleck Romanov.

LEVINE, Justice.

Barbara F. Stracka and Eugenia F. Whelihan appeal from a judgment which quieted title to all oil, gas, and minerals in 160 acres of land in Harvey A. Peterson, Norman L. Peterson (Petersons), Oil Development Company of Texas (ODCT), and Traverse Oil Co. (Traverse). We affirm.

## 1. BACKGROUND

In 1946 McKenzie County conveyed 160 acres of land to Margaret Friday and reserved fifty percent of the minerals. Later that year Friday conveyed the land to Palmer Peterson by a special warranty deed which contained the language: "subject to the reservation of 50% of all oil or minerals." The respective interests in the minerals of each of the parties to this appeal are traceable to this deed and contingent upon what Friday and Palmer Peterson intended by the quoted language.

Stracka and Whelihan claim that this language reserved fifty percent of the minerals in Friday and therefore, as her successors in interest, they own fifty percent of the minerals. The Petersons, successors in interest to Palmer Peterson, and ODCT and Traverse, which hold mineral leases in the land from the Petersons, assert that this language was not a reservation but rather an exclusion from Friday's warranty of McKenzie County's prior fifty percent reservation. They maintain that Friday conveyed to Palmer Peterson the fifty percent of the minerals which remained after the prior McKenzie County reservation and that by virtue of the 1946 conveyance to Palmer Peterson, Friday owned no mineral interests and thus Stracka and Whelihan inherited no mineral interests.[1]

---

1. In a series of decisions this Court held that the statute under which McKenzie County purported to reserve 50% of the minerals was invalid because there was no statutory authority for counties to make such mineral reservations.

*Adams County v. Smith,* 74 N.D. 621, 23 N.W.2d 873 (1946); *Kershaw v. Burleigh County,* 77 N.D. 932, 47 N.W.2d 132 (1951); *Kopplin v. Burleigh County,* 77 N.D. 942, 47 N.W.2d 137 (1951); *State v. The California Company,* 79 N.D. 430,

The issue is whether the trial court erred in quieting title to the disputed fifty percent of the mineral interests referred to in the 1946 Friday-Palmer Peterson deed, based on its finding that there was no reservation of those minerals intended.

## 2. STANDARD OF REVIEW

■ We interpret deeds to ascertain and effectuate the parties' mutual intentions. North Dakota Century Code §§ 47–09–11, 9–07–03; *Miller v. Schwartz*, 354 N.W.2d 685 (N.D.1984). If the deed is unambiguous, we determine the intent of the parties from the instrument itself and only if there is ambiguity do we consider extrinsic evidence. NDCC § 9–07–04; *Miller v. Schwartz, supra.* Stracka and Whelihan interpret the quoted language to be a reservation while the Petersons, et al., claim it was a limitation on Friday's warranty. Under the circumstances of this case these are both rational yet contrary interpretations of the deed. We therefore conclude the trial court was correct in finding the deed ambiguous, *Mueller v. Stangeland*, 340 N.W.2d 450 (N.D.1983), and in allowing extrinsic evidence to ascertain Friday and Palmer Peterson's mutual intent in executing the deed. NDCC §§ 9–07–03, 9–07–12; *Mueller, supra; Perschke v. Burlington Northern, Inc.*, 311 N.W.2d 564 (N.D.1981). The determination of Friday and Palmer Peterson's mutual intent is a finding of fact which will not be overturned unless clearly erroneous. NDRCivP 52(a); *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636 (N.D.1984). This case was decided on the basis of stipulated facts and the record of title. Previously, when the record consisted of undisputed facts or documentary evidence we did not apply the clearly erroneous standard of NDRCivP 52(a). *See, e.g., Krohnke v. Lemer*, 300 N.W.2d 246 (N.D.1980); *Dolajak v. State Farm Auto & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977). Recently, however, the United States Supreme Court held the clearly erroneous standard applies regardless if findings are based on undisputed or documentary evidence, *Anderson v. City of Bessemer City, N.C.*, 470 U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Because the Supreme Court's interpretation of Rule 52(a) is highly persuasive, *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973), we will follow *Anderson* and apply the clearly erroneous standard in this case.[2]

The facts, law, and equities supporting all parties' positions are strong and competing, making this a difficult case. We cannot conclude however that the district court finding was clearly erroneous. Several considerations lead us to this conclusion.

## 3. DISCUSSION

■ The district court construed the words "subject to" in the phrase "subject to the reservation of 50% of all oil or minerals" as excluding from Friday's warranty McKenzie County's fifty percent reservation.[3] This interpretation accords with the

---

56 N.W.2d 762 (1953). Therefore, because McKenzie County's fifty percent reservation was void, its fifty percent interest passed to Friday. *See DeShaw v. McKenzie County*, 114 N.W.2d 263 (N.D.1962); *Steen v. Fay*, 66 N.W.2d 528 (N.D.1954). Consequently, the Petersons claim ownership of one hundred percent of the minerals, subject to the ODCT and Traverse leases.

**2.** Effective January 1, 1986, the Explanatory Note to NDRCivP 52(a), as amended, will read in part:

"A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. *Anderson v. City of Bessemer City,*

N.D., 470 U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Prior decisions of this Court to the contrary are to be disregarded." Supreme Court Order of Adoption of the Amendments to the North Dakota Rules of Civil Procedure, Sept. 17, 1985.

**3.** The district court cited *United States v. McKenzie County*, 187 F.Supp. 470 (D.N.D.1960), *affirmed sub nom., Murray v. United States*, 291 F.2d 161 (8 Cir.1961), to support this finding. Although *Murray* involved similar facts and issues it is distinguishable from this case. In *Murray* the disputed language was contained in a warranty deed which explicitly referred to a McKenzie County mineral reservation and the page it was recorded in the office of the Register of Deeds. Here a special warranty deed, *see* footnote 6, *infra,* was used which did not con-

generally accepted view that the words "subject to" mean "limited by," or "subservient or subordinate to" and connote a limitation on a grantor's warranty rather than a reservation of rights.[4] *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d 714 (7 Cir. 1942); *Texaco, Inc. v. Pigott*, 235 F.Supp. 458 (S.D.Miss.1964); *Hendrickson v. Freericks*, 620 P.2d 205 (Alaska 1980); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964); *Hedin v. Roberts*, 16 Wash.App. 740, 559 P.2d 1001 (1977).

The district court also found it significant that the disputed language in the Friday-Palmer Peterson deed was virtually identical to the wording in the McKenzie County-Friday deed.[5] It is apparent the district court concluded that Friday reproduced the wording from the McKenzie County deed in her own deed in order to exclude the County's reservation from her warranty. We do not find either of these findings to be clearly erroneous.

Stracka and Whelihan contend NDCC § 47–09–13 requires interpreting the deed in favor of Friday. Section 47–09–13 provides that a reservation in any grant is to be interpreted in favor of the grantor. However here, the issue is whether a reservation exists, not the interpretation of a reservation. Not only is § 47–09–13 inapposite, the deed should be interpreted against Friday because she, as drafter of

the deed, caused the ambiguity. NDCC §§ 9–07–19; 47–09–11.

Stracka and Whelihan further argue that the post-1946 conduct of Friday and the Petersons demonstrates that the 1946 deed was intended to contain a reservation. If a deed is ambiguous, the parties' conduct subsequent to the deed's execution may be used to help determine the meaning of ambiguous language. *Beck v. Lind*, 235 N.W.2d 239 (N.D.1975).

The Petersons were not parties to the 1946 deed and so their conduct is immaterial. Friday's 1951 execution of an oil and gas lease in the land could be construed as indicating that she intended to reserve fifty percent of the minerals in the 1946 deed. However, it could also indicate Friday's mistaken belief that she acquired fifty percent of the minerals by the judicial invalidation of McKenzie County's reservation. *See* footnote 1, *supra.* Thus, from the evidence there is at least one plausible explanation for Friday's conduct which supports the district court judgment. The fact the evidence might support findings contrary to the district court's findings does not render them clearly erroneous. *Walch v. Jacobson*, 361 N.W.2d 617 (N.D.1985).

Finally, Stracka and Whelihan contend that Friday's use of a special warranty deed,[6] rather than a warranty deed, indi-

---

tain any specific reference to the McKenzie County reservation, but merely an ambiguous allusion to a reservation. While it was clear in *Murray* that no reservation was intended, in the instant case no such clarity abides. Consequently, *Murray*, and for the same reason *Winter v. United States*, Civil No. A4–82–6 (D.N.D. 1985), cited by the Petersons, are not controlling here, although they tend to point the way.

4. Stracka and Whelihan cite *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965), to support their assertion that the words "subject to" constitute a reservation. In *Bulger* the court construed the phrase "subject to one-half of all oil and mineral rights" as a reservation. However, *Bulger* is distinguishable on its facts because in that case there was no prior mineral reservation to which the "subject to" language could refer. Consequently, it was evident that the "subject to" wording could only indicate an intention to reserve mineral rights. That is not the situation here.

5. The McKenzie County deed read "Subject to the reservations of 50% of all oil or minerals as provided in Ch. 136, Laws of N.Dak., 1941," while Friday's deed read "subject to the reservation of 50% of all oil or minerals." The district court's memorandum decision stated:

> "It is significant that the subject-to clause refers to 'the' reservation of 50% of all 'oil or minerals'. The County deed two months earlier likewise speaks of 'oil or minerals' and in the same percentage."

6. A special warranty deed warrants title only against claims held by, through, or under the grantor, or against encumbrances made or suffered by her, and it cannot be held to warrant title generally against all persons. *Central Life Assur. Soc. v. Impelmans*, 13 Wash.2d 632, 126 P.2d 757 (1942); *see generally* 7 Thompson, Real Property, § 3191 (1962); 20 Am.Jur.2d, *Covenants, Conditions, Etc.,* § 53. Therefore, under a special warranty deed a grantor is liable if the grantee's ownership is disturbed by

cates that the disputed language was a reservation. Stracka and Whelihan argue that Friday's special warranty deed, by definition, excluded the McKenzie County reservation from her warranty. Therefore, it would have been unnecessary for Friday to include the language "subject to the reservation of 50% of any oil or minerals" in order to exclude the McKenzie County reservation. Consequently, they claim that this language could only have been intended to be a reservation.

Although this argument has merit, in view of all the considerations previously discussed, we are not convinced that the trial court made a mistake in finding that Friday did not intend to reserve fifty percent of the minerals.[7] An equally reasonable explanation for Friday's use of the special warranty deed is the added protection it gave her. The special warranty deed excluded from Friday's warranty, not only the McKenzie County reservation, but all interests and claims in the land arising prior to her ownership. This is a reasonable explanation, supported by the record, for Friday's use of a special warranty deed which is consistent with the district court judgment. Again, merely because the evidence might also support other findings does not render the district court's findings clearly erroneous. *Walch, supra.*

Viewing the entire record we are not left with a definite and firm conviction that the trial court erred in finding that Friday and Palmer Peterson mutually intended that there be a limitation on Friday's warranty rather than a reservation of mineral interests.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

some claim arising through an act of the grantor.

7. It does not appear that Stracka and Whelihan raised this argument below so the district court did not have occasion to consider it.