Harvey MONSON, Plaintiff
and Appellant,

v.

Tim DWYER, Exeter Exploration Compa-
ny, and Inter-American Petroleum Cor-
poration, Defendants and Appellees.

Civ. No. 10965.

Supreme Court of North Dakota.

Dec. 18, 1985.

Gordon Dihle (argued), of Gordon Dihle
and Associates, Williston, for plaintiff and
appellant.

Roland A. Suess (argued), and John A.
Suess (appearance), of Suess Law Firm,
Williston, for defendant and appellee Tim
Dwyer.

Mackoff, Kellogg, Kirby & Kloster, Dic-
kinson, for defendants and appellees Exe-
ter Exploration Co. and Inter-American Pe-
troleum Corp.

GIERKE, Justice.

Harvey Monson appeals from a judgment
of the District Court of McKenzie County.
This is an action to determine the rights of
Harvey Monson, Roy Monson, and Tim
Dwyer to certain oil, gas, and mineral
rights. We affirm.

On January 23, 1959, Roy Monson [Roy]
received a deed from the Federal Land
Bank granting some 360 acres. By this
deed the Federal Land Bank reserved, for a
period of twenty-five years, beginning on
November 29, 1944, a fifty percent mineral
interest. On April 1, 1959, Roy executed a
warranty deed conveying to Tim Dwyer
[Dwyer] the 360 acres acquired by Roy
from the Federal Land Bank.

The Monson-Dwyer deed described the
property as follows:

"The East Half of the Southwest Quar-
ter (E/2SW/4), the Southwest Quarter of

the Southwest Quarter (SW/4SW/4) of Section Twenty-six (26): the Southeast Quarter of the Southeast Quarter (SE/4SE/4) of Section Twenty-seven; the Northeast Quarter of the Northwest Quarter (NE/4NW/4), the North Half of the Northeast Quarter (N/2NE/4) of Section Thirty-four (34); the North Half of the Northwest Quarter (N/2NW/4) of Section Thirty-five (35), all in Township One Hundred Fifty-one (151) North, Range One Hundred One (101) West of the Fifth Principal Meridian; subject to all reservations of record; and EXCEPT-ING AND RESERVING unto the party of the first part, his heirs, successors or assigns twenty-five (25%) per cent of all right, title and interest in and to any and all oil, gas, uranium, clay, gravel and other minerals in or under the foregoing described lands, with such easement for ingress, egress and use of the surface as may be incidental or necessary for the use of said rights: AND

"[T]he Northwest Quarter of the South-west Quarter (NW/4SW/4) of Section Twenty-six (26); the South Half of the Northeast Quarter (S/2NE/4), the North-west Quarter of the Northeast Quarter (NW/4NE/4), the Northeast Quarter of the Northwest Quarter (NE/4NW/4), the North Half of the Southeast Quarter (N/2SE/4) of Section Twenty-seven (27), in Township One Hundred Fifty-one (151), Range One Hundred One (101) West of the Fifth Principal Meridian, subject to all reservations and exceptions of record"

In the above description, the first para-graph is the land which Roy received from the Federal Land Bank and which was the property covered by the Federal Land Bank reservation. The land in the second paragraph is land in which all minerals had previously been reserved, and Roy did not own any minerals.

On June 3, 1982, Roy executed a mineral deed to Harvey Monson which purported to quitclaim, "... only that portion which was reserved and disclaimed by the Federal Land Bank ...". The Monson-Monson

deed further stated that Roy was to retain his twenty-five percent interest. Dwyer, in 1972 and again in 1977, had executed oil and gas leases on the acreage released by the Federal Land Bank with no claim made by Roy.

At trial Roy alleged that the Monson-Dwyer deed was to convey only twenty-five percent (25%) of the minerals and that Roy was to retain twenty-five percent (25%) of the minerals and all rights in the Federal Land Bank interest which had expired in November 1969. The trial court found for Dwyer, finding the present mineral owner-ship to be: Roy Monson, twenty-five per-cent (25%); Tim Dwyer, seventy-five per-cent (75%); and Harvey Monson, none.

The primary issue on appeal is whether or not the words "subject to" were intend-ed to reserve the Federal Land Bank's in-terest in Roy. Recently we have deter-mined that the clearly erroneous standard of Rule 52(a) of the North Dakota Rules of Civil Procedure applies to findings based on undisputed or documentary evidence. *Stracka v. Peterson*, 377 N.W.2d 580, 582 (N.D.1985). This application of the clearly erroneous standard is a departure from our previous treatment of findings such as the instant case presents. After applying this standard of review we conclude the trial court was not clearly erroneous.

■■■ We have stated that the words "subject to" are generally terms of qualifi-cation meaning "subordinate to", "subser-vient to", "limited by", or "charged with". *Stracka, supra,* 582, 583. These words connote a limitation on a grantor's warranty and not a reservation of rights. *Stracka, supra,* 583. This interpretation of the words "subject to" is the generally accept-ed view and is properly adhered to by the trial court in the instant case. We con-clude that the words "subject to" in the Monson-Dwyer deed do not act as words of reservation.

■■■ Harvey Monson further contends that if the words "subject to" do not act as words of reservation, the trial court erred in failing to find that the Monson-Dwyer

deed is ambiguous. Harvey Monson correctly asserts that an ambiguity exists when good arguments can be made for either of several contrary positions as to the meaning of a term. *West v. Alpar Resources, Inc.*, 298 N.W.2d 484, 490 (N.D. 1980). He alleges that the contradictory positions as to the interpretation of the words "subject to" are that it meant either a limitation of warranty and the grantee took subject to that limitation, or that the words "subject to" totally removed the land from the warranty and excepted the reserved mineral interest. He then argues that the latter interpretation is supported by the fact that the words "subject to" are used on two portions of the deed, the portion which includes mineral rights and a portion of the deed under which Roy had no mineral interest. He asserts that since the language appeared in both portions of the deed, including the portion under which Roy had no mineral interest and the disputed portion, it was obviously meant to except the prior reservation from the warranty. We cannot agree. When the proper definition of the words "subject to" is applied, it is apparent that the words are used to protect the grantor, specifically placing a limitation on the grantor's warranty.

Harvey Monson directs this court to *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965) to support the contention that the words "subject to" constitute a valid reservation. He argues that the *Bulger* decision reinforces the argument that there is an ambiguity which automatically arises when the words "subject to" are used in a deed. The Nebraska court ruled the expression "subject to" is a term of qualification which acquires its meaning from the context in which it appears. *Bulger, supra*, 22. The context in which this expression was used in *Bulger* is the very reason it is distinguishable from the instant case. In *Bulger* there was no prior reservation of a mineral interest to which the expression "subject to" could refer and, consequently, the court concluded that the phrase must necessarily express an intent to reserve the mineral interest. *Stracka, supra*, 583, cit-

ing *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965).

Harvey Monson also asserts that § 47–09–13 of the North Dakota Century Code requires that the deed be interpreted in favor of the grantor. As in *Stracka*, the issue here is whether or not a reservation exists and not the interpretation of a valid reservation.

We affirm the decision of the trial court. The present ownership of the disputed mineral rights is: Roy Monson, twenty-five percent (25%); Tim Dwyer, seventy-five percent (75%); and Harvey Monson, none.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.