David E. and Estella R. GARCIA, Plaintiffs and Appellants,

v.

OVERVOLD MOTORS, INC., a domestic corporation; Russ Howard and Mike Long, Defendants and Appellees.

Civ. No. 10570.

Supreme Court of North Dakota.

July 2, 1984.

Garcia & Garcia, Devils Lake, for plaintiffs and appellants; argued by Kirk Garcia, Devils Lake.

Nilles, Hansen, Magill & Davies, Fargo, for defendants and appellees; argued by E. Thomas Conmy III, Fargo.

SAND, Justice.

Plaintiffs David and Estella Garcia appealed from an order granting summary judgment in favor of Overvold Motors, Inc., in an action in which Garcias sought the return of their trade-in car and down payment plus damages for an allegedly defective car sold to Garcias.

David Garcia, in September 1981, negotiated with Overvold's saleswoman Pamela Smith for the purchase of a 1981 Cadillac Seville. Garcias subsequently bought the car on 17 September for less than its list price. Its odometer registered 9,800 miles.

Garcias alleged that about one week after the purchase "the engine leaked, the car steamed, and there were problems with the radio aerial and body moldings." Garcias wrote to Overvolds complaining of the defects in late September and took the car to Overvolds for repair shortly thereafter. Garcias maintained, however, that Overvolds did not complete the repairs. Garcias asserted that on 26 October 1981 "the entire dashboard fell out and on Garcias" while they were traveling to Fargo to again have the car repaired. Garcias alleged that when they returned the car to Overvolds on the 26th an Overvold salesman told David Garcia that he could return the car and that the outstanding payments and trade-in value of his old car would be applied toward the purchase of a new 1982 Cadillac Cimarron. Garcias contended that at that time a third Overvold's employee, Michael Long, became involved. Long allegedly represented himself as a member of the General Motors Acceptance Corp. and talked to Garcias about credit at reduced rates toward purchase of the Cimarron.

On 31 October 1981 Garcias, in a letter to Overvolds, rejected the car and demanded refund of payments made and return of the trade-in car. When Overvolds never returned their old car or their down payment, Garcias instituted this action. Garcias alleged breach of contract, breach of warranty, fraud, and misrepresentation and conspiracy to defraud. The trial court granted summary judgment in favor of Overvolds and Garcias appealed.

Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or whenever only a question of law is involved. *Umpleby v. State of North Dakota,* 347 N.W.2d 156, 159 (N.D.1984).

In considering a motion for summary judgment the court may examine the pleadings, depositions, admissions, affidavits and interrogatories, and inferences to be drawn therefrom, to determine whether or not summary judgment is appropriate. *Umpleby, supra.*

Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts. *Umpleby, supra.*

Even when factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. Such facts, in essence, are not considered material facts. *Umpleby, supra.*

On appeal from a summary judgment, we view the evidence in a light most favorable to the party against whom the summary judgment was granted. *Umpleby, supra.*

Garcias primarily contended that a genuine issue of material fact existed as to whether or not they had purchased a car with a "new" car warranty. Garcias admitted knowledge of the fact that the car had nearly 10,000 miles on it when they bought it, but contended that Overvolds led them to believe that they would nevertheless receive a special extension of the manufacturer's warranty. David Garcia asserted in an affidavit that "contemporaneously with the purchase of the car" Overvold salesman Russ Howard stated to him that the car was being sold as "new" with a full warranty. Garcia further asserted that Howard furnished him with a new car warranty information pamphlet, a copy of which he attached to his affidavit. Garcia also alleged in his affidavit that Howard told him that the sticker price of the 1981 Seville was $27,100 and that as an inducement to him to purchase the car Howard showed him a manufacturer's new car sticker for a 1982 Seville and falsely represented to him that the price of the 1981 Seville was the same. Finally, Garcia attempted to substantiate his claim by submitting to the trial court a copy of the "Retail Buyer's Order" in which the box designating that the car was "new" had been checked.

Overvolds disputed Garcias' claim and cited the same "Retail Buyer's Order" in which Garcia had signed a "Seller's Disclaimer of Warranty." The disclaimer appeared preprinted on the front of the order form and, when signed by the buyer, conceivably applies to either a new or used car depending upon which box, "new" or "used," is marked. The disclaimer provides:

"Any warranties on the products sold hereby are those of the manufacturer. As between this retail seller and buyer the product is to be sold 'AS IS' and the entire risk as to the quality and performance of the product is with the buyer. The seller expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products. This disclaimer by this seller in no way affects the terms of the manufacturer's warranty. The buyer acknowledges being so informed prior to the sale."

This statement per se is not indicative of the conditions, warranties, etc., the Garcias claim the seller made with the sale. The record does not disclose if the buyer is required to sign the disclaimer in all instances whether the car purchased is new or old or only under certain conditions.

Overvolds also submitted the "Retail Installment Contract" wherein the word "used" had been written to describe the car. Overvolds further alleged that Garcia's statement in his affidavit that he believed he had purchased a "new" car was contradicted by his testimony in his deposition that "yes," he "realized that [the] vehicle was a used vehicle."

■ Upon examining the depositions, affidavits, interrogatories, and documents, we believe that a genuine issue of material fact exists as to whether or not Garcias received a new car warranty rather than whether or not Garcias were led to believe they got a new car. Paragraph number 11 on the reverse side of the "Retail Buyer's Order" contains a significant provision which, in view of the facts, creates a material issue of fact. That paragraph in pertinent part provides that "the [seller's disclaimer of warranty] on the reverse side [does] not apply if the dealer extends the warranty or service contract in conjunction with the sale of the vehicle...."

Garcia's affidavit alleged that he received an extended warranty equivalent to a new car warranty and his assertion is supported by the fact that the box entitled "new" had been marked on the "Retail Buyer's Order" to describe the car. Overvold's responding affidavit made by Howard contains no denial of Garcia's allegation and nothing exists in the record to dispute his claim so as to entitle Overvolds to a judgment as a matter of law. Howard's affidavit was the only one submitted by the defendant and neither he nor Smith nor Long were deposed. The evidence concerning Howard's involvement in the negotiations is unclear yet potentially significant as Garcia alleged in his affidavit that Howard extended the new car warranty "contemporaneously" with the purchase of the car, but stated in hjs deposition that "[he] didn't deal with [Howard]." Further-more, a patent ambiguity exists between the "new" and "used" car designations on the retail buyer's order and the retail installment contract. The significance of that ambiguity, however, may be de minimis in view of the fact that possibly the seller's disclaimer of warranty could be made applicable to both new and used cars. Nevertheless, it is one of several questions which merit resolution by a finder of fact.

In construing the evidence in a light most favorable to the party against whom the summary judgment was granted, we conclude that a material issue of fact exists as to whether or not Garcias received a "new" car with an extended warranty of service or a used car with a "new car" extended warranty of service, or no extended warranty of service of any kind.

The summary judgment is vacated and the case is remanded for trial on the issues of fact and on the merits.

VANDE WALLE, Acting P.J., GIERKE and PEDERSON, JJ., and NORBERT J. MUGGLI, Surrogate Judge, concur.

MUGGLI, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.