**Curtis MILLER d/b/a Miller Oil Company, Plaintiff and Appellee,**

v.

**Earl SCHWARTZ, Earl Schwartz Company, Earl Schwartz, Inc., GoFor Oil, Inc., and R.L. York Company, Defendants and Appellants.**

**Civ. No. 10619.**

Supreme Court of North Dakota.

Aug. 15, 1984.

Anseth & Zander, Williston, for plaintiff and appellee; argued by Janet Holter Zander, Williston.

McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellants; argued by Robert A. Wheeler, Minot.

ERICKSTAD, Chief Justice.

Defendants Earl Schwartz, Earl Schwartz Company, Earl Schwartz, Inc., GoFor Oil, Inc., and R.L. York Company appeal from a Renville County District

Court judgment quieting title to a partial interest under an oil and gas lease covering two quarter sections of land in plaintiff Curtis Miller, doing business as Miller Oil Company. We affirm.

On June 10, 1959, Grace Solheim, acting as guardian of Theodore Solheim, executed an oil and gas lease to the J.M. Huber Corporation. The lease covered the SE¼ of Section 19 and the NE¼ of Section 30, Township 162 North, Range 85 West, and other property not involved in this action. The parties have stipulated that this lease "was recorded in Book 61 of Miscellaneous at page 467 as Document No. 88639." On June 26, 1964, a producing oil well known as the "Solheim # 1" was completed in the NE¼ of Section 30. Another producing oil well known as the "Solheim # 2" was subsequently completed in the SW¼SE¼ of Section 19. Both wells have been operating continuously and are each located on 80-acre spacing units covering the west one-half of each quarter section.

Through a series of partial assignments, Schwartz acquired substantial interests in the Solheim lease covering the two quarter sections of land. The parties have stipulated that by January 1973, Schwartz had acquired .4046875 of what they term the "owner interest". This constituted .4625 of the total lessee interests. In early 1973, Miller, on behalf of Norval Hamerly, began negotiating with several holders of interests under the Solheim lease, including Schwartz, to acquire those interests.

On April 19, 1973, Schwartz executed and delivered to Miller two documents. One of the documents is entitled "Assignment of Oil and Gas Lease" which purports to assign to Hamerly Schwartz's interest in the Solheim lease insofar as the lease covers the SW¼NE¼ of Section 30 and the SW¼SE¼ of Section 19. This document was recorded shortly thereafter. The second document, which is the focus of the dispute in this action, is entitled "Assign-

ment of Working Interest" and states in pertinent part as follows:

"WHEREAS the undersigned, <u>Earl Schwartz Company</u> IS THE OWNER OF AN UNDIVIDED <u>.4625000</u> Working Interest in the following described oil well, to wit:

| G. Solheim #1 | NE¼ of Section 30, T162N, R85W |
| G. Solheim #2 | SE¼ of Section 19, T162N, R85W |

and is more particularly set forth and described in accordance with the hereto attached Working Interest Division Agreement Dated <u>June 10, 1959</u> and recorded in Book <u>61</u> of <u>Misc. Records</u> on page <u>467, 469 Renville</u> County, North Dakota. NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That in consideration of <u>Ten</u> Dollars the receipt and sufficiency of which is hereby acknowledged, the undersigned,

 <u>Earl Schwartz Company</u>
 <u>Kenmare, North Dakota</u>

a Individual or individuals, assigns and transfers to:

 <u>Norval Hamerly</u>
 <u>Sherwood, North Dakota</u>

all his right, title and interest in and to the afore mentioned Working Interest in said real property, an undivided <u>.4625000</u> ( %) Working Interest.

"And the undersigned covenants with their respective executors, administrator and assigns, that he is the lawful owner of said oil and gas interest in the above described property and has good right and authority to sell and convey the same." [1]

No "Working Interest Division Agreement" was produced at trial and it is undisputed that the document recorded in "Book 61 of Misc. Records on page 467, 469" is the underlying Solheim oil and gas lease. [2]

---

**1.** The underscored text in the above-quoted "Assignment of Working Interest" represents typewritten language added to the printed form.

**2.** A separate document entitled "Ratification of Oil and Gas Lease," in which Grace Solheim approved the oil and gas lease in her individual capacity as joint tenant, is recorded at page 469.

Hamerly subsequently transferred all of his interests in the mineral acres to Miller. In October 1979, Miller completed a producing well known as the "Solheim # 3" in the NE¼SE¼ of Section 19, and in October 1980, he completed a producing well known as the "Solheim # 4" in the NE¼NE¼ of Section 30. Miller's attorney, while preparing a title opinion, discovered that an assignment was missing with regard to the property on which the Solheim # 3 and Solheim # 4 wells are located. Miller testified that when he discussed the matter with Schwartz, Schwartz told him that "unless I could come up with the other assignment that he owned 46.25 percent of the Solheim 3 and 4."

On May 4, 1981, Schwartz transferred his interest in the N½SE¼ and SE¼SE¼ of Section 19 and the N½NE¼ and SE¼NE¼ of Section 30 to the R.L. York Company. Ray L. York and Robert Mau are sons-in-law of Schwartz and are partners in the R.L. York Company. Miller subsequently found the "Assignment of Working Interest" and the document was recorded on May 15, 1981.

Miller thereafter instituted this quiet title action. The trial court, in its memorandum of decision, found that the owners of the R.L. York Company had actual knowledge of Miller's claim to the interests in the property and concluded that the company therefore was not an innocent third-party purchaser for value. This determination has not been challenged in this appeal. The trial court also concluded that the "Assignment of Working Interest" was unambiguous and transferred the Earl Schwartz Company's entire interest in the Solheim # 1 and Solheim # 2 wells and the Solheim lease as it applies to the full SE¼ of Section 19 and the NE¼ of Section 30. Judgment was entered quieting title in Miller, and the defendants (hereinafter collectively referred to as Schwartz) have appealed.

The issue in this appeal is whether or not the trial court erred in concluding that the "Assignment of Working Interest" is unambiguous and effectively transfers Schwartz's entire interest in the wells and the Solheim lease as it applies to both quarter sections. Schwartz asserts that the instrument is ambiguous, and when construed together with the "Assignment of Oil and Gas Lease," assigns only his right to a share of all oil and gas produced by the Solheim # 1 and Solheim # 2 wells, and not any of his interest in the east halves of the two quarter sections where the Solheim # 3 and Solheim # 4 wells are located.

■ Documents which convey oil and gas interests are subject to the same general rules that govern interpretation of contractual agreements. *Johnson v. Mineral Estate, Inc.,* 343 N.W.2d 778, 780 (N.D. 1984); *MacMaster v. Onstad,* 86 N.W.2d 36, 40 (N.D.1957). The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. *West v. Alpar Resources, Inc.,* 298 N.W.2d 484, 490 (N.D. 1980). The determination of whether or not a contract is ambiguous is also a question of law for the court to decide. *Schulz v. Hauck,* 312 N.W.2d 360, 363 (N.D.1981).

■ Pursuant to § 9–07–04, N.D.C.C., the intention of the parties to a written contract must be ascertained from the writing alone if possible. *Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D.1982). A contract must be read and construed in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties. *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897, 907 (N.D.1982); § 9–07–06, N.D.C.C. Section 9–07–02, N.D.C.C., provides that the language of a contract governs its interpretation if the language is clear and explicit and does not involve an absurdity.

■ Upon reviewing the "Assignment of Working Interest", we agree with the trial court that the document is unambiguous and that the parties' intentions, as expressed by the language used in the agreement, can be ascertained from the writing alone.

The document states that the Earl Schwartz Company is the owner of an undivided .4625000 working interest in the Solheim # 1 and Solheim # 2 wells located on the NE¼ of Section 30 and the SE¼ of Section 19, respectively. The document then states that the working interest is more particularly described in a "Working Interest Division Agreement", and recites the location in the county records of not a "Working Interest Division Agreement", but of the underlying Solheim lease which conveyed the working interest in all of both quarter sections of property. The granting clause of the instrument assigns and transfers all of the company's "right, title and interest in and to the afore mentioned Working Interest in said real property, an undivided .4625000 … Working Interest."

Although there is a discrepancy between the printed reference to the "Working Interest Division Agreement" and the typewritten reference to the location of the Solheim lease in the county records, this cannot supply the basis for a conclusion that the document is ambiguous. This Court has held that "typewritten additions to preprinted documents shall control." *Thiel Industries v. Western Fire Ins. Co.*, 289 N.W.2d 786, 788 (N.D.1980). *See also Olson v. Peterson*, 288 N.W.2d 294, 298 (N.D.1980); § 9–07–16, N.D.C.C. Applying this rule of construction, it follows that the underlying Solheim lease was the document intended by the parties to more particularly describe the extent of the working interest conveyed.

■ Furthermore, it is clear that the use of the term "working interest" does not, in itself, limit the interest conveyed to only a share of the oil and gas produced by the two wells in existence at the time the assignment was executed. Syllabus 1 of this Court's decision in *Corbett v. La Bere*, 68 N.W.2d 211 (N.D.1955), states: "The interest acquired by the lessee under an ordinary oil and gas lease is known as a working interest and is an interest in real property." A "working interest" has also been defined as "[t]he operating interest under an oil and gas lease. The owner of the working interest has the exclusive right to exploit the minerals on the land." 8 H. Williams and C. Meyers, *Oil and Gas Law*, Manual of Terms, pp. 838–838.1 (1982). *See also Slawson v. North Dakota Industrial Commission*, 339 N.W.2d 772, 776 n. 3 (N.D.1983). Thus, it appears that the term "working interest", as commonly used in the oil industry, is generally synonymous with the term "leasehold interest." *See* 8 H. Williams and C. Meyers, *supra*, at pp. 392–393.

We conclude, as did the trial court, that the "Assignment of Working Interest" in this case transferred not only Schwartz's interest in the Solheim # 1 and Solheim # 2 wells, but his entire interest in the Solheim lease as it applies to the two quarter sections of property.

■ Schwartz also asserts that the trial court erred in refusing to consider the "Assignment of Oil and Gas Lease" in conjunction with the "Assignment of Working Interest" in determining the interests intended to be conveyed by Schwartz to Hamerly. However, neither document makes reference to the other, and the trial court stated in its memorandum of decision that "[t]here is no evidence that the two assignments are only part of a series of documents." We have reviewed the record and agree with the trial court. Extrinsic evidence is properly considered only if the language of the agreement is ambiguous and the parties' intentions cannot be determined from the writing alone. *Yon v.*

*Great Western Development Corp.,* 340 N.W.2d 43, 46 (N.D.1983).

For the reasons stated in this opinion, the judgment of the district court is affirmed.

PEDERSON, GIERKE and SAND, JJ., and HODNY, District Judge, concur.

HODNY, District Judge, sitting in place of VANDE WALLE, J., disqualified.