Rosemary ELDRIDGE, Plaintiff
and Appellant,

v.

EVANGELICAL LUTHERAN GOOD SA-
MARITAN SOCIETY and Kathryn
Finn, Defendants and Appellees.

Civ. No. 870137.

Supreme Court of North Dakota.

Dec. 29, 1987.

Mack, Moosbrugger, Ohlsen, Dvorak &
Carter, Grand Forks, for plaintiff and ap-
pellant; argued by John H. Moosbrugger.

Vogel, Brantner, Kelly, Knutson, Weir &
Bye, Ltd., Fargo, for defendants and appel-
lees; argued by Douglas R. Herman.

GIERKE, Justice.

This is an appeal by Rosemary Eldridge
(Eldridge) from a judgment issued by the
district court granting Evangelical Luther-
an Good Samaritan Society's (Society) mo-
tion for summary judgment. We affirm.

In May of 1978, Eldridge began working
for the Society at the Good Samaritan Cen-
ter in Larimore, North Dakota. Eldridge
was a part-time employee working four
days per week. Eldridge's position was
that of a charge nurse. Her duties as a
charge nurse included administering medi-
cation and treatments to residents, doc-
umenting such treatments, daily assessing
the resident's condition, and consulting
with the physician.

In August of 1978, Eldridge was as-
signed the additional position of in-service
director. Her responsibilities as in-service
director included initiation and review of
individual resident care plans. Her em-
ployment schedule then entailed three days
per week as in-service director and two
days per week as a charge nurse. This
schedule continued from August of 1978
until the spring of 1981, at which time
there were cutbacks in office personnel.
Eldridge's in-service director position was
cut back to two days per week while the
charge nurse position was increased to
three days per week.

In August of 1982, Kathryn Finn (Finn),
Eldridge's supervisor, determined that it
was necessary to suspend Eldridge's duties
as in-service director in order to allow El-
dridge to get organized at limiting the de-
linquent care plans. Accordingly, Eldridge
was relieved of her in-service duties in or-
der to allow her to catch up on the care
plans that were delinquent at that time.
Subsequently, Finn determined that El-

dridge lacked responsibility for the phase of her work involving the care plans and therefore the care plan duties were reassigned.

Eldridge continued working as a charge nurse for three days per week from August of 1982 until July of 1983 at which time her schedule as a charge nurse was increased to four days per week. Eldridge continued with the four days per week schedule until she requested an educational leave of absence in January of 1985.

On January 18, 1985, Eldridge commenced the present action against the Society, her corporate employer, and Finn, her immediate supervisor, claiming a breach of an employment contract.[1] Eldridge contended that the Personnel Policy Handbook distributed by the Society was an employment contract which rebutted the presumption of at-will employment. Eldridge further contended that she was wrongfully terminated because the Society did not follow the progressive discipline procedures in its employee handbook.[2]

At the pretrial conference, Society and Finn, the defendants, made several oral motions including a motion to dismiss Finn as a defendant, a motion to strike the tort claims and claims for punitive damages, and a motion for summary judgment. The trial court directed that written motions and briefs be filed. On January 13, 1987, in a memorandum opinion the trial court concluded that the Personnel Policy Handbook of the Society was not an employment contract. Consequently, the trial court found no genuine issue as to any material fact and therefore granted the defendant's motion for summary judgment. On January 26, 1987, a judgment was filed which dismissed Eldridge's complaint with prejudice. This appeal followed.

Eldridge raises two issues on appeal. Eldridge claims that she was wrongfully discharged from her employment with the Society because the Society failed to follow the Progressive Discipline Procedures of its Personnel Policy Handbook which was an employment contract creating an exception to at-will employment. Eldridge also claims that since a contractual relationship existed there are genuine issues as to material facts which preclude the granting of summary judgment and therefore the trial court erred in granting summary judgment in favor of the defendants.

Because it is dispositive of this appeal, our review focuses on whether or not the

---

1. Eldridge claims that relieving her of her part-time position of in-service director which resulted in a reduced workload from five days per week to three days per week constituted a termination of employment. Because of our determination that Eldridge was an at-will employee, we need not decide whether or not Eldridge was actually discharged or terminated from her employment with the Society.

2. In the Personnel Policy Handbook of the Society, the provisions regarding the Progressive Discipline Procedure reads as follows:
   "VII.   PROCEDURES AND RULES
   "A.   Progressive Discipline
   1.   Verbal Warning—The employee will be counseled regarding the indiscretion and an informal statement will be placed in the employee's file. S/he will get a copy of the statement. Information will be included of possible future disciplinary action. If no further violation ensues within a year, the statement will be removed.
   2.   Written Warning—The employee will be counseled regarding the indiscretion and a written statement will be placed in his/her file. The employee will receive a copy of this statement, which refers to the date and nature of any earlier warning plus specifics of date, time, nature of the current offense. Information will be included of possible future disciplinary action. If no further violation ensues within a year, the statement will be removed.
   3.   Three–Day Suspension Without Pay—The employee will be counseled regarding the indiscretion and a written statement will be placed in his/her file. The employee will receive a copy of this statement, which refers to the date and nature of any earlier warning(s) plus specifics of date, time, nature of the current offense. Information will be included of the Three–Day Suspension Without Pay and possible future disciplinary action. If no further violation ensues within a year, the statement will be removed.
   4.   Termination—The employee will be counseled regarding the indiscretion and a written statement will be placed in his/her file. The employee will receive a copy of this statement, which refers to the date and nature of any earlier warnings(s) [sic] plus specifics of date, time, nature of the current offense."

Personnel Policy Handbook of the Society was an employment contract which created an exception to the at-will employment and thus bound the Society to follow the Progressive Discipline Procedures set forth in its employee handbook.

■ The construction of a written contract to ascertain its legal affect is a question of law for the court to determine, and on appeal, the Supreme Court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120, 121 (N.D. 1986); *Miller v. Schwartz*, 354 N.W.2d 685, 688 (N.D.1984); *West v. Alpar Resources, Inc.*, 298 N.W.2d 484, 490 (N.D.1980). In interpreting a contract, the contract must be read and construed in its entirety and all of its provisions taken into consideration so that the true intent of the parties is determined. *Bailey v. Perkins Restaurants, Inc.*, supra; *Miller v. Schwartz*, supra; *Oakes Farming Ass'n v. Martinson Bros.*, 318 N.W.2d 897, 907 (N.D.1982).

■ In the instant case, the district court concluded that the Personnel Policy Handbook was not an employment contract and therefore Eldridge's employment was at will and could be terminated at any time and for any reason. We agree.

Section 34–03–01 of the North Dakota Century Code provides as follows:

"Termination of employment at will—Notice required. An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title."

Thus, in North Dakota when an employee is hired for an unspecified term, the employment is presumed to be at will. Section 34–03–01, N.D.C.C.; *see also, Bailey v. Perkins Restaurants, Inc.*, supra at 122; *Wood v. Buchanan*, 72 N.D. 216, 221, 5 N.W.2d 680, 682 (1942).

In *Sand v. Queen City Packing Co.*, 108 N.W.2d 448, 451 (N.D.1961), this Court stated that in the absence of a statute to the contrary, an employer has the right to terminate his employees with or without cause.

In *Bailey v. Perkins Restaurants, Inc.*, supra, this Court recognized the general rule regarding the modification of at-will employment by employee handbooks as follows:

"Courts in other jurisdictions, however, have recently created an exception to the presumption of at will employment and have held that an employer may be contractually bound by promises, express or implied, in employee handbooks with respect to job security and termination procedures. (Citations omitted.)"

Further, in *Bailey v. Perkins Restaurants, Inc.*, supra, this Court quoted *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 230–31, 685 P.2d 1081, 1088 (1984), for the general rule regarding the modification of at-will employment by employees handbooks as follows:

" '[I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of *specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises. *See* Restatement (Second) of Contracts § 2 (1981) (promise is a manifestation of intention *to act or refrain from acting in a specified way*, so made as to justify a promise [promisee] in understanding a commitment has been made).

" 'It may be that employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and

are simply general statements of company policy. Additionally, policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy and, thus, not binding. Moreover, the employer may specifically reserve a right to modify those policies or write them in a manner that retains discretion to the employer.' *See also Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985). [Emphasis in original.]"

In the instant case, the Personnel Policy Handbook of the Society did contain an explicit disclaimer in the Closing Statement located directly above the signature of the employee.[3] The disclaimer provides that "[n]o policy, benefit, or procedure implies or may be construed to imply this Handbook to be an employment contract for any period of time."

Eldridge argues that an employment contract existed which allows her employment to be terminated only for cause and therefore a genuine issue as to the material facts of her termination remained which precluded the granting of a summary judgment.

Rule 56 of the North Dakota Rules of Civil Procedure provides that summary judgment shall be granted if "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

In *Stensrud v. Mayville State College,* 368 N.W.2d 519, 521 (N.D.1985), this Court stated the criteria necessary to determine the appropriateness of summary judgment as follows:

"Summary judgment is appropriate to promptly and expeditiously dispose of controversies without trial when, after viewing the evidence in the light most favorable to the party against whom summary judgment is sought and giving her the benefit of all favorable inferences, only a question of law is involved or there is no genuine dispute over either the material facts or inferences to be found from undisputed facts. *Garcia v. Overvold Motors, Inc.,* 351 N.W.2d 110 (N.D.1984); *Allegree v. Jankowski,* 355 N.W.2d 798 (N.D.1984); *Wilbur–Ellis Co. v. Wayne & Juntunen Fertil.,* 351 N.W.2d 106 (N.D.1984). Even when a factual dispute exists summary judgment is proper if the law is such that the resolution of the factual dispute will not change the result. *Gowin v. Hazen Memorial Hospital Ass'n,* 349 N.W.2d 4 (N.D.1984)."

We believe that the disclaimer contained in the Closing Statement of the Personnel Policy Handbook of the Society operated to preserve the presumption of at-will employment and therefore the Society was not bound to follow the Progressive Discipline Procedures set forth in its employee handbook.

We conclude that Eldridge was an at-will employee of the Society and that even

**3.** The portion of the Personnel Policy Handbook of the Society which contains the disclaimer reads as follows:

### "A CLOSING STATEMENT

"This Handbook is being made available to all workers on the Good Samaritan team. Its purpose is to: (1) Provide understanding and direction for our personnel program; (2) Clarify action to be taken to minimize the possibility of unauthorized personnel action; and (3) Provide a record to guide future policy and serve as a framework for the revisions that appear to be desirable on the basis of experience.

"The contents of this Handbook are presented for your information. While we fully intend to continue offering the benefits and policies as written, The Ev. Lutheran Good Samaritan Society reserves the right to change or revoke them, permanently or temporarily, if it is in the best interest of the Society to do so. *No policy, benefit, or procedure implies or may be construed to imply this Handbook to be an employment contract for any period of time.* [Emphasis added.]

### "ACKNOWLEDGEMENT

"I have read the Personnel Policies Handbook and understand the material contained therein.

"I agree to all the conditions set forth in the Handbook.

"_____      _____
Date              Signature of Employee"

though a factual dispute may exist as to Eldridge's alleged termination, summary judgment was proper since Eldridge's employment was terminable at will.[4] Accordingly, we do not believe that the trial court erred in granting summary judgment in favor of the defendants.

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

MESCHKE, Justice, dissenting.

I dissent.

Obviously, any employment is a contract. The issue is about the terms of that contract. Undertaking "PROCEDURES AND RULES" for "Progressive Discipline," as part of an employment agreement to set terms for disciplinary discharge, does not necessarily fix the "employment contract for any period of time." And, I cannot view this "Closing Statement" as an unambiguous or "explicit disclaimer."

There are evident issues of fact about the "ambiguity and reliance created by an employer's disclaimer in an employee handbook that purports to 'taketh' what the remainder of the handbook appears to 'giveth,' and the effect of such ambiguity on the employer-employee relationship." *Bailey v. Perkins Restaurants, Inc.,* 398 N.W.2d 120, 123 (Justice Levine, specially concurring) (N.D.1986). *See also Sadler v. Basin Elec. Power Co-op.,* 409 N.W.2d 87 (N.D.1987).

Accordingly, I would reverse the summary judgment and remand for trial of the issues of fact.

---

4. We note that even though a factual dispute may exist, summary judgment is proper if the law is such that the resolution of the factual dispute will not change the result. *Stensrud v. Mayville State College,* 368 N.W.2d 519, 521 (N.D.1985); *Striegel v. Dakota Hills, Inc.,* 365 N.W.2d 491, 495 (N.D.1985); *Gowin v. Hazen Memorial Hosp. Ass'n,* 349 N.W.2d 4, 8 (N.D. 1984).