Olson v. Souris River Telecommunications Cooperative, Inc., 1997 ND 10, 558 N.W.2d 333|N.D. Supreme Court|
Olson v. Souris River Telecommunications Cooperative, Inc., 1997 ND 10, 558 N.W.2d 333
[Go to Documents]
Filed Jan. 24, 1997
[Dissent Filed .]
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 10
Milton A. Olson, Plaintiff and Appellee
v.
Souris River Telecommunications Cooperative, Inc., Defendant and Appellant
Civil No. 960144
Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Jon R. Kerian, Judge.
REVERSED.
Opinion of the Court by VandeWalle, Chief Justice.
Deborah J. Carpenter, Carpenter Offices, 307 North 4th Street, P.O. Box 2761, Bismarck, ND 58502, for plaintiff and appellee. Jan M. Sebby, Pringle & Herigstad, PC, American Bank and Trust Building, P.O. Box 1000, Minot, ND 58702-1000, for defendant and appellant.
Olson v. Souris River Telecommunications Cooperative
Civil No. 960144
VandeWalle, Chief Justice.
[¶1] Souris River Telecommunications Cooperative (SRT) appealed from the trial court's judgment that it committed a breach of contract in its employment relationship with the plaintiff, Milton Olson. The trial court awarded $201,882.35 in damages to the plaintiff. SRT claims the trial court erred in finding an employment contract existed, and further contends, even if a contract did exist, the trial court did not properly measure the damages for any breach. Because the statutory presumption of employment at will was not overcome, we reverse.
[¶2] Milton Olson was hired by SRT as an accounting and office supervisor in 1989. Olson interviewed with Warren Hight, SRT's General Manager, and Jerome Jaeger, SRT's Personnel Director. During this interview, Olson disclosed that he suffered from hyperthyroidism, and informed Hight and Jaeger this condition had affected his previous employment. However, Olson stated he was currently under medication which kept the problem "under control." Neither Hight or Jaeger inquired any further into the matter.
[¶3] In late 1990, Olson was given the highest scores in all categories during a mandatory job performance evaluation. In December of 1990, Olson was hospitalized for tests for his hyperthyroid condition. These tests involved some psychiatric evaluations. Following his release from the hospital, Olson informed Hight of the nature and results of the tests, and told Hight further tests would be required. On January 7, there was an incident in the office involving Olson and another SRT employee. As a result of this incident, Hight asked Olson to apologize to the employee. Olson did so, but also prepared a grievance report regarding his version of the event. This grievance report was given to Hight on January 8. The next day, Hight gave Olson the choice to resign or be fired. Olson's employment was terminated the same day.
[¶4] Olson sued, filing a complaint against SRT in May of 1991, claiming breach of contract, professional defamation, and discrimination against the handicapped. In the breach of contract claim, Olson argued the progressive-employment termination steps found in the SRT employee handbook were not followed and this constituted a breach of Olson's employment agreement with SRT.
[¶5] SRT filed a motion for summary judgment in June of 1992. The motion was denied. Following extensive discovery, the case went to trial in May of 1995. The trial court issued a memorandum decision, in late 1995, dismissing the discrimination and defamation claims. As to the breach of contract claim, however, the trial court found a valid employment contract existed between Olson and SRT based on the language found in the employee handbook. The trial court stated:
"But for his writing and presenting his grievances to Hight Olson would not have been fired.
"We have here a precipitate firing with no advance warning to a management level employee, an employee, within the coverage of the Personnel Policy Manual. The manual purports to be the means of providing the employee and the employee's job with a very important personnel tool that is designed to serve as a source of information that an employee can look to with authority and completeness. If the job is furnished with this tool then the tool must be implemented when the job is affected. . . .
* * *
The manual can disclaim a contract but in viewing the document as a whole I find sufficient guarantees accorded to an employee to show an intent to overcome the presumption of § 34-03-01 NDCC to prevent a firing in the manner, and for the causes demonstrated . . . ." (emphasis added).
[¶6] SRT raises three issues on appeal.
I
[¶7] SRT claims the trial court erred when it found the employee manual created a contract. SRT contends the language in the handbook, which includes an expressed disclaimer providing the handbook "is not a contract," also includes the necessary language to remove any intent to create a contract.
[¶8] The construction of the language of a written contract to determine the legal effect is a question of law for the court to decide. Bailey v. Perkins Restaurants, Inc., 398 N.W.2d 120, 121 (N.D. 1986) (citing Miller v. Schwartz, 354 N.W.2d 685, 688 (N.D. 1984)). On appeal we examine and construe the language independently to determine if the trial court erred in its interpretation. Bailey, 398 N.W.2d at 121. In doing so, we read the contract language in its entirety and take all of its provisions into consideration to determine the parties intent. Id.(citing Miller, 354 N.W.2d at 688).
[¶9] When a person is hired for an indefinite term, the employment is presumed to be at will. N.D.C.C. § 34-03-01. Bailey, 398 N.W.2d at 122. Section 34-03-01 states, "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." The presumption of at will employment may be overcome when an employer provides a personnel manual which dictates company policy. Bailey, 398 N.W.2d at 122. In these situations, the entire manual must be examined to determine if language in the manual creates an intent to overcome the at will presumption and create an employment contract. Schmidt v. Ramsey County, 488 N.W.2d 411, 413 (N.D.Ct.App. 1992) (citing Eldridge v. Evangelical Lutheran Good Samaritan Society, 417 N.W.2d 797, 799 (N.D. 1987)). Therefore, we examine SRT's employee manual, in its entirety, to determine if SRT intended to create an employment contract.
[¶10] The SRT employee manual states:
"Statement of Purpose
"This written policy statement is not a contract. It is a statement of personnel policies which have been established by management. These policies are subject to change in the sole discretion of management.
"This manual contains statements of personnel policies, practices, guidelines, and procedure. It is designed to be a working guide for supervisory and staff personnel in the day-to-day administration of our company program.
"Authority and Distribution
"This Personnel Policy Manual is the property of Souris River Telephone and is issued to you as a means of providing you and your job with a very important personnel tool. It is not for public use. It is designed to serve as a source of information you can look to with authority and completeness."
As the manual pertains to discharges and grievances, it reads as follows:
"Cause for Immediate Discharge
"Employee may be dismissed without notice for the following causes:
1. Dishonesty, deceit or falsification of records.
2. Theft[.]
3. Absence from the job without leave.
4. Conduct contrary to the interests of the Cooperative.
"Discipline Procedures
"In the event a situation occurs, and immediate discharge is not necessary, the following disciplinary procedure shall be followed:
1st offense - Employee will be given a warning.
2nd offense - Employee will be suspended for one day without pay.
3rd offense - Employee will be suspended for three days without pay.
4th offense - Shall be considered as cause for discharge.
"Grievance Procedures
"It is our purpose to provide an effective and acceptable means for employees to bring problems and complaints concerning their well-being at work to the attention of management. Therefore, a formal grievance procedure has been established for the benefit and use of non-union employees.
"A grievance is defined as 'any condition of employment that the employee thinks or feels is unjust or inequitable.' Under the plan, hourly non-union employees and salaried employees may submit grievances in the following sequence:
1. To assure prompt attention, grievances should be submitted within five days of the event prompting the grievance.
2. Grievances are presented to the employee's immediate supervisor.
3. If the grievance cannot be settled by the employee's immediate supervisor, the supervisor should, within two working days, give a report to the department head, or Manager.
4. If no satisfactory action is taken within one week, the employee should submit grievance to the Personnel Director."
[¶11] The trial court, after considering the relevant evidence, found a valid employment contract existed. The trial court relied on a recent Washington Supreme Court ruling, Swanson v. Liquid Air Corp., 118 Wash.2d 512, 826 P.2d 664 (1992), where that court re-evaluated the standard set in Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984), a case which our previous decisions on this issue found persuasive. See Eldridge, 417 N.W.2d at 799 (stating St. Regis Paper Co., provided the general rule for at will employment and employee handbooks) and Bailey, 398 N.W.2d at 122 (quoting St. Regis Paper Co., as authoritative). The trial court, quoting the Washington Supreme Court in Swanson, stated, "'[w]e reject the premise that this disclaimer can, as a matter of law, effectively serve as an eternal escape hatch for an employer who may then make whatever unenforceable promises of working conditions it is to its benefit to make.'" 826 P.2d at 674.
[¶12] In relying on this decision, the trial court seemed to suggest North Dakota law should parallel Washington law because our initial rulings used St. Regis Paper Co. for support. But, the trial court's reliance on Swanson fails to consider several important factual and legal differences between Swanson and this case. Significantly, Washington's at will employment law is based on common law doctrine. St. Regis Paper Co., 685 P.2d at 1084. Washington developed their law from a late 19th century treatise and stated, "[t]he law of the case seems to be well settled, that a contract such as this constitutes an employment for an indefinite period and that such a contract may be abandoned by either party at will without incurring any liability therefor." Davidson v. Mackall-Paine Veneer Co., 149 Wash. 685, 688, 271 P. 878, 879 (1928) (citing H. Woods, Master and Servant, § 134 (2d ed. 1886)).
[¶13] North Dakota law, in contrast, is clearly statutory. N.D.C.C. § 34-03-01. In this state there is no common law where the law is declared by statute. N.D.C.C. § 1-01-06. Section 34-03-01 states, "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." We have stated, "[i]n the absence of a statute to the contrary, an employer has the right to discharge his employees for or without cause . . . ." Sand v. Queen City Packing Co., 108 N.W.2d 448, 451 (N.D. 1961) (emphasis added). Although we found St. Regis Paper Co.persuasive in Bailey and subsequent cases, we never indicated an intention to overrule the legislature's authority to create and maintain a statutory at will employment doctrine. In Bailey, when we cited St. Regis Paper Co., we observed it provided the general rule for modification of the at will employment doctrine with regards to employee handbooks. Bailey, 398 N.W.2d at 122. Under that general rule, an explicit disclaimer stating no contract exists demonstrates the employer's intent the handbook be only a guide for the employee. St. Regis Paper Co., 685 P.2d at 1088. The trial court's conclusion ignores our consistent interpretation of section 34-03-01. Although we have found Washington law persuasive in the past, it does not mean we will march in lock-step with every development of that state's law.
[¶14] Secondly, the trial court's reliance on Swanson, does not recognize the factual differences between that case and the instant case. In Swanson, the plaintiff did not know about the employee manual or its contract disclaimer until several months after the start of his employment. 826 P.2d at 665. The plaintiff started work in late 1983 and the manual, with its disclaimer, was distributed in early 1984. Id. The plaintiff admitted he never read the disclaimer. Id. at 666. Following some labor unrest, a Memorandum of Working Conditions, with a contract disclaimer, was circulated which prohibited certain activities, such as drug and alcohol abuse while on the job. Id. This memorandum was a negotiated agreement where the employer, "almost certainly offered the Memorandum in consideration for the employees' promise not to unionize and the employees almost certainly accepted it in consideration for the foregoing of their legal right to unionize." Id. at 670. The Memorandum in Swanson was a negotiated document for continued employment. But for the Memorandum, the plaintiff would have left the company and sought other available employment. Id. at 671.
[¶15] Here, in contrast, Olson received the employee handbook the day he started working with SRT, and at no point during his tenure with SRT were there negotiations for continued employment. Furthermore, Swanson was on appeal from a summary judgment and many questions of fact regarding the nature of the disclaimer had not been tried. Here, the questions of fact have been fully litigated and the only remaining question of law is whether the handbook constituted a contract.
[¶16] Last, the trial court's conclusion fails to recognize the clear language in the policy manual, which states, "[t]his written policy statement is not a contract." We have previously stated such language does not create a contract and the employment is still presumptively at will. See Eldridge, 417 N.W.2d at 800; Bailey, 398 N.W.2d at 123. See also Bykonen v. United Hospital, 479 N.W.2d 140, 142 (N.D. 1992) (stating a conspicuous disclaimer in one employee manual but not in another does not override the presumption of employment at will). In both Bailey and Eldridge, we concluded an employee handbook did not create a contract because the employee was put on clear notice that the manual preserved the presumption of at will employment. In each of these cases, there was a provision which expressly stated the handbook was not a contract.(1)
[¶17] Here, the policy manual unambiguously states it does not create a contract. The trial court found the provision which stated an employee should rely on the manual as a "source of information you can look to with authority and completeness," as language creating a contract, and by not following the termination procedures found in the handbook, the trial court determined a breach occurred. This conclusion did not consider other language in the manual which provides an employee may be terminated for "any . . . reason in the sole discretion of management . . ." or for "[c]onduct contrary to the interests of the Cooperative. . . ." Although the "authority and completeness" language might suggest the handbook will provide greater detail and protection for the employee, when considered with the other language found in the handbook, it does not show an intent to contract.
[¶18] We conclude the handbook's language does not overcome the presumption of at will employment as provided for in N.D.C.C. § 34-03-01, and does not create a contract. Olson's employment was still at will and SRT was not bound by the progressive termination policy found in the policy manual.
II
[¶19] Because we determine no valid contract exists, the two other issues raised by SRT, whether the trial court erred in its calculation of damages and whether pre-judgment interest should be applied to the damage award, are not considered by this court.
[¶20] We reverse the opinion of the trial court, and direct entry of judgment for SRT in accordance with this opinion.
[¶21]
Gerald W. VandeWalle, C.J.
Dale V. Sandstrom
Mary Muehlen Maring
Allan L. Schmalenberger, D.J.
[¶22] Allan L. Schmalenberger, D.J., sitting in place of Meschke, J., disqualified. Neumann, Justice, dissenting.
[¶23] I respectfully dissent. The disclaimer in the SRT employees' manual is not like the disclaimer in Bailey v. Perkins Restaurants, Inc., 398 N.W.2d 120, 121 (N.D. 1986), on which the majority relies, nor is it like the disclaimers in Eldridge v. Evangelical Lutheran Good Samaritan Society, 417 N.W.2d 797, 800 (N.D. 1987), or in Bykonen v. United Hospital, 479 N.W.2d 140, 142 (N.D. 1992). In those cases, the disclaimer was clear, unambiguous, and uncontradicted by language advising the employees the manual was "a source of information" they could "look to with authority and completeness."
[¶24] In Bailey, the disclaimer was prominently displayed at the top of the second page of the manual, surrounded by a box or border, and headed with the clear label "DISCLAIMER." It was not made ambiguous by other contradictory language regarding the manual's authority. In Eldridge, the disclaimer was prominently placed at the end of the personnel policy handbook in a closing statement directly above the employee's acknowledgment and signature. The language surrounding it supports and reinforces the message of the disclaimer.
[¶25] SRT's disclaimer, on the other hand, strikes me as much less direct, much less clear, and much less obvious. It is not set off by a box or border. It is found in a paragraph entitled "Statement of Purpose," rather than "DISCLAIMER." It simply says "this . . . statement" -- not this "handbook" or this "manual" -- "is not a contract." It does not mention "employee" or "contract of employment." The disclaimer is followed, just two short paragraphs later, by the confusing and contradictory statement that "it is designed to serve as a source of information you can look to with authority and completeness."
[¶26] In Bailey, this court stated, quoting with approval Thompson v. St. Regis Paper Co., 102 Wash.2d 219, ___, 685 P.2d 1081, 1088 (1984), "[I]t may be that employers will not always be bound by statements in employment manuals. They can specificallystate in a conspicuousmanner that nothing contained therein is intended to be part of the employment relationship. . . . " (Emphasis added.) Bailey at 122. In my opinion, SRT's attempted disclaimer is neither specific nor conspicuous.
[¶27] I agree with the majority that the statutory source of our at will employment law precludes us from following Swanson v. Liquid Air Corp. That, however, should not prevent us from acknowledging the wisdom and equity in the statement quoted by both the trial court and the majority, a statement which bears repeating here: "We reject the premise that this disclaimer can, as a matter of law, effectively serve as an eternal escape hatch for an employer who may then make whatever unenforceable promises of working conditions it is to its benefit to make." 826 P.2d at 674. If employers in North Dakota are to be permitted to use this "escape hatch" to snatch away the illusory promises they have made to their employees, they should at least be required to articulate the escape hatch clearly, conspicuously, specifically and unambiguously. SRT has failed to do so. I would affirm the trial court's finding that SRT made promises of specific treatment in specific situations, but would remand for a recalculation of damages.
[¶28]
William A. Neumann
Footnote: [1]In Bailey, the handbook language read:
"This Employee Handbook has been drafted as a guideline for our employees. It shall not be construed to form a contract between the Company and its employees. Rather, it describes the Company's general philosophy concerning policies and procedures." 398 N.W.2d at 121. (emphasis added)
In Eldridge, the handbook provided:
"This Handbook is being made available to all workers on the Good Samaritan team.
* * *
No policy, benefit, or procedure implies or may be construed to imply this Handbook to be an employment contract for any period of time." 417 N.W.2d at 800 n. 3. (emphasis added)