1998 N.D.App. 7

**Duane HAUGSTAD, d/b/a HB Rentals, LLC, Plaintiff and Appellee,**

**v.**

**Glen BALTRUSCH, Defendant and Appellant.**

**Civil No. 970360CA.**

Court of Appeals of North Dakota.

Sept. 15, 1998.

Faron Eugene Terry, Minot, for plaintiff and appellee.

Richard R. LeMay, of Legal Assistance of ND, Minot, for defendant and appellant.

PER CURIAM.

[¶ 1] Glen Baltrusch appealed from the judgment entered in Duane Haugstad's action to recover unpaid rent and to evict Baltrusch from his apartment. We affirm.

[¶ 2] On November 15, 1991, Baltrusch and Ernie Lenertz executed an apartment lease. The lease required Baltrusch to pay rent of $300 per month and to pay for "Lights & Heat." The lease required Lenertz to pay for "Water Garbage & Cabel [sic]."

[¶ 3] On May 15, 1992, Baltrusch and Lenertz executed a new lease agreement under a United States Department of Housing and Urban Development housing program. The 1992 lease provides that its term begins May 15, 1992, requires the landlord to enter into a housing assistance payments contract with a Public Housing Agency (PHA), and provides that the PHA will make housing assistance payments to the landlord. It also provides, in part:

> 2. *Conflict with Other Provisions of Lease:*
>
> In case of any conflict between the provisions of this section of the Lease and any other provisions of the Lease, the provisions of this section shall prevail.
>
> . . . .

4. *Rent:*

(A) The amount of the total monthly rent payable to the Landlord during the term of the Lease (called the "Contract Rent") shall be determined in accordance with the Contract between the Landlord and the PHA.

(B) The portion of the Contract rent payable by the Tenant ("Tenant Rent") shall be an amount determined by the PHA in accordance with HUD regulations and requirements. . . .

(C) The tenant rent as determined by the PHA is the maximum amount the Landlord can require the Tenant to pay as rent for the dwelling unit, including all services, maintenance and utilities to be provided by the Landlord in accordance with this Lease.

. . . .

9. *Utilities and Appliances:*

(A) The Landlord shall provide the utilities listed in column (1) below for the dwelling unit without any additional charge to the Tenant. The cost of these utilities is included in the Contract rent. The utilities listed in column (2) below are not included in the Contract rent, and are paid by the Tenant:

| Type of Utility: | Column 1: Landlord Paid | Column 2: Tenant Paid |
| --- | --- | --- |
| Water, Sewer, Garbage | X | |
| Heating, (Specify Type) Natural Gas | X | |
| Lights, electric NSP | X | |
| Cooking (Specify type) electric | | X |

[¶ 4] Also, on May 15, 1992, Lenertz and the Minot Housing Authority (MHA), the PHA in the agreements, executed a housing assistance payments contract. Paragraph 3(A) of that contract provided:

The total monthly rent payable to the Owner during the term of this Contract is called the "Contract rent." Initially and until adjustment of the Contract rent in accordance with section 8 of this Contract, the Contract rent shall be *$332.00* per month.

Paragraph 3(B) provided that Baltrusch would pay $173 "per month to the Owner as the tenant rent." Paragraph 3(C) provided that "the PHA shall make a housing assistance payment to the Owner" of $159 per month. The housing assistance payment is the difference between the "contract rent" and the "tenant rent." The contract rent, tenant rent, and the housing assistance payments were periodically adjusted.

[¶ 5] Lenertz sold the apartment building to Duane Haugstad, doing business as HB Rentals, LLC, on January 1, 1996. On August 12, 1996, Haugstad sent the tenants in the building a letter advising them that cable television rates were increasing, and further stating:

HB Rentals will continue to provide Basic Cable Service at no additional fee to you. However, should you desire to have the same Expanded Basic cable service that we have been previously enjoying you must contact TCI Cable of Minot, 852–0376, and add it on yourselves. I am told the cost to add Expanded Cable would be $14.34 per month per apartment.

Baltrusch had been paying Lenertz and then Haugstad $28 per month for cable television.[1]

[¶ 6] Haugstad sued Baltrusch to recover unpaid rent and to evict him from his apartment in July 1997. Baltrusch answered and counterclaimed. Baltrusch admitted owing Haugstad $712 for unpaid rent, alleged he "has paid $28.00 more than he is obligated to pay for a total of 60 months," entitling him "to a setoff in the amount of $1680.00 against rent now owed," and sought dismissal of the complaint, a setoff, and judgment for $968.

[¶ 7] The trial court found:

3. The 1991 lease had required the landlord to pay the cable television cost for the apartment. The 1992 lease required the landlord to pay the water, sewer, garbage, heating, lights, and electricity, but

---

1. Baltrusch asserted in his brief: "Glen had been making a payment to Lenertz for cable television and when pressed by Haugstad continued to make the same payment to him. Haugstad claims it was an oral agreement. Glen simply responded to Haugstad's request by making the payment." Baltrusch asserted in his answer and counterclaim that he paid $28 per month for sixty months, from which acquiescence or agreement may be inferred.

did not include the telephone or the cable television.

. . . .

5. [Haugstad's] deal with Baltrusch from the renewal in May of 1996 was that Baltrusch paid for all of his cable service in addition to the rent due under the lease. In the beginning, Baltrusch paid $28 for cable in a separate check to the landlord, Haugstad. Later he combined the two amounts.

6. At the time of trial, Baltrusch had unpaid rent for June of 1996 of $100, and $204 for June, July and August of 1997. The cable television was unpaid for the months of January, February, March and June of 1996 and June, July and August, 1997.

7. If Baltrusch was entitled to the same free basic cable the other tenants received, he would have been entitled to 12 months basic cable service at $12 per month. He paid 9 months, so in fact, he got 3 months free.

[¶ 8] The trial court concluded Haugstad (1) "is not responsible for overcharges, if any, which were made by a prior landlord;" (2) "is entitled to a judgment for unpaid rent in the amount of $712 . . . offset by $72 for basic cable paid by Baltrusch;" (3) Haugstad is entitled to a writ of eviction; and (4) Haugstad is entitled to attorney fees of $250 and costs of $80. Judgment was entered accordingly, and Baltrusch appealed.

[¶ 9] Baltrusch argues that the trial court erred in determining his rights under the housing assistance program lease and in computing the amount of setoff.

[¶ 10] Baltrusch contends the 1991 apartment lease is still in effect; the 1992 residential lease agreement under the housing assistance program is an addendum to the 1991 apartment lease; and Baltrusch cannot be required to pay his landlord a fee for cable television in addition to the amount of rent stated in the housing assistance payments contract. Haugstad contends the 1991 apartment lease expired by its own terms on November 15, 1992, and the residential lease agreement executed on May 15, 1992, superseded the 1991 lease. The dispositive issue is whether or not the parties' lease allowed Haugstad to collect from Baltrusch $28 per month for cable television, in addition to the tenant rent specified in the housing assistance payments contract.

[¶ 11] "The construction of the language of a written contract to determine the legal effect is a question of law for the court to decide." *Olson v. Souris River Telecomms. Coop. Inc.*, 1997 ND 10, ¶ 8, 558 N.W.2d 333. "Questions of law are fully reviewable." *Ridley v. Metropolitan Fed. Bank FSB*, 544 N.W.2d 867, 868 (N.D.1996).

[¶ 12] Whether the 1992 agreement replaced the 1991 agreement, or was merely an addendum to the 1991 agreement, the question of whether or not Baltrusch's landlord could collect from him a fee for cable television in addition to the rent specified in the housing assistance payments contract is governed by paragraphs 4 and 9 of the 1992 agreement. Paragraph 4(C) of the 1992 residential lease agreement provides:

> The tenant rent as determined by the PHA is the maximum amount the Landlord can require the Tenant to pay as rent for the dwelling unit, including all services, maintenance and utilities to be provided by the Landlord in accordance with this Lease.

Paragraph 9 of the 1992 lease specifies all the "services, maintenance and utilities to be provided by the Landlord in accordance with this Lease." Paragraph 9(B) requires the landlord to provide a range and a refrigerator. Paragraph 9(A) requires the landlord to provide water, sewer, garbage, natural gas heating, electric lights, and electric cooking utilities "without any additional charge to the Tenant." Paragraph 9 does not require the landlord to provide cable television services "without any additional charge to the Tenant." Thus, the $28 per month that Baltrusch was charged for cable television was not "rent for the dwelling unit" and was not required to be provided by his landlords "without any additional charge to the Tenant." We conclude that the parties' lease allowed Haugstad to collect from Baltrusch $28 per month for cable television, in addi-

tion to the tenant rent specified in the housing assistance payments contract.

[¶ 13] Because we have concluded that the parties' lease allowed Baltrusch's landlords to collect from him $28 per month for cable television, Baltrusch was not entitled to any greater offset than that granted by the trial court.

[¶ 14] The judgment is affirmed.

[¶ 15] HOBERG, C.J., WILLIAM F. HODNY, Surrogate Judge, and DEBBIE G. KLEVEN, District Judge, concur.